UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AJAMU OLUTOSIN,

                              Plaintiff,

        -against-

WILLIAM LEE, *et al.*,

                              Defendants.

No. 14-cv-685 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Ajamu Olutosin brings this action *pro se*, pursuant to 42 U.S.C. § 1983, against

Defendants New York State Department of Corrections and Community Supervision

("DOCCS") employees Lee, Koskowski, Royce, Ketchin, Bresett, Gunsett, Brothers, Carlson,

Coffin, Bernstein, and Ryan (collectively, "Defendants") asserting claims for violations of his

rights under the First, Eighth, and Fourteenth Amendments and various state law claims. Before

the Court is Defendants' motion to dismiss Plaintiff's amended complaint. (ECF No. 69.) For

the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

On December 20, 2010, Plaintiff was transferred from Great Meadow Correctional

Facility ("Great Meadow") to Green Haven Correctional Facility ("Green Haven"). (Am.

---

[1] The following facts are derived from Plaintiff's amended complaint (the "Amended Complaint," ECF No. 44), the original complaint (the "Original Complaint," ECF No. 2), and the exhibits to the Original Complaint. Though an amended complaint typically "supplant[s], rather than supplement[s]," a prior complaint, in the case of *pro se* plaintiffs, courts typically consider allegations in both an original and amended complaint. *Lewis v. Weiss*, No. 12-cv-07242 (ALC), 2016 WL 1718251, at *3 (S.D.N.Y. Apr. 27, 2016) (citing *Davila v. Lee*, No. 11-cv-496 (LTS) (FM), 2014 WL 7476207, at *1, n. 1 (S.D.N.Y. Dec. 30, 2014), *report and recommendation adopted*, 2015 WL 1573323 (S.D.N.Y. Apr. 9, 2015); *Anthony v. Brockway*, No. 15-cv-451, 2015 WL 3419536, at *1 (N.D.N.Y. May 27, 2015)). This is to afford a *pro se* plaintiff additional leeway in his or her pleadings. Additionally, the Amended Complaint references exhibits attached to the Original Complaint, which evidences Plaintiff's intention that the Amended Complaint be considered together with the Original Complaint.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/16/2016

Copies mailed/faxed  5/16/2016

Chambers of Nelson S. Román, U.S.D.J.

Compl. ¶ 13.)  On December 22, 2010, Plaintiff was called down to the draft room at Green Haven to retrieve his property bags from Great Meadow.  (*Id.* ¶ 14.)  Plaintiff was informed by a corrections officer ("C.O.") that the property bag containing Plaintiff's typewriter was not included among the transferred property bags, while another C.O., whom Plaintiff could not identify, told Plaintiff "that's what happens to inmates who like filing lawsuits."[2]  (*Id.*)  Plaintiff was then escorted to the H-Block reception housing unit and later filed an inmate claim for his missing typewriter.  (*Id.*)

On December 28, 2010, Plaintiff was transferred from the H-Block to the G-Block and placed in a double bunk cell with another inmate who smoked (Plaintiff does not smoke).  (*Id.* ¶ 15.)  Plaintiff brought the issue to the attention of the G-Block supervising sergeant, who informed Plaintiff that Senior Corrections Counselor Gonzales (who was named as a defendant in the 2010 Lawsuit) and/or Defendant Koskowski was responsible for assigning double bunk cell placements.  (*Id.*)

On or around January 3, 2011, Plaintiff was moved to the E-Block, and was again assigned to a double bunk cell with an inmate who smoked.  (*Id.* ¶ 16.)  Two days later, Plaintiff was moved to a different double bunk cell.  (*Id.*)  Plaintiff complained to the E-Block C.O. about being constantly moved between blocks and being unable to go to the commissary or the law library.  (*Id.*)  Different blocks are assigned different law library days, and Plaintiff contends that he was constantly moved for the express purpose of harassing Plaintiff and keeping him from

---

[2] Plaintiff initiated a lawsuit against Senior Corrections Counselor Gonzalez, Corrections Counselor Daugherty, and Superintendent Ercole of Green Haven on April 14, 2010 (the "2010 Lawsuit").  *Olutosin v. Ercole, et al.*, No. 1:10-cv-3143 (PGG).  On March 21, 2011, Judge Paul G. Gardephe granted the defendants' motion to dismiss with respect to Plaintiff's retaliation and due process claims and dismissed Plaintiff's claim seeking an injunction on the grounds that it was moot.  (No. 1:10-cv-3143 (PGG) at ECF No. 19.)

accessing the law library.  (*Id.*)  Plaintiff was placed in the Special Housing Unit ("SHU") on

January 5, 2011 when he refused to move to another double bunk cell.  (*Id.*)

On January 7, 2011 Plaintiff filed a complaint with Defendant Lee, the superintendent of

Green Haven, about the above incidents.  (*Id.* ¶ 17.)  On January 13, Plaintiff received a response

from Defendant Lee, which informed Plaintiff that he should bring these issues to Defendant

Lee's attention again should they persist after he was released from SHU.  (*Id.*)  Plaintiff also

received a monetary settlement to address the lost typewriter.  (*Id.*)  Plaintiff was released from

SHU on January 28, 2011, after which time he wrote a follow-up complaint to Defendant Lee.

(*Id.* ¶ 18.)

On February 2, 2011, Plaintiff was moved to the A-Block.  (*Id.* ¶ 19.)  Plaintiff arrived at

the A-Block with five property bags and placed them in the stairway.  (*Id.*)  Defendant Bresett

was behind the company's control gate at the time and told Plaintiff "to hurry up moving his

property" into the cell.  (*Id.*)  Plaintiff moved his bags one at a time because they were heavy,

and Defendant Bresett "told [P]laintiff that he better move his property faster."  (*Id.*)  Plaintiff

told Defendant Bresett "that he was moving them in as fast as he can."  (*Id.*)  Defendant Bresett

then threatened Plaintiff—telling Plaintiff that he would "beat [P]laintiff up over there (A-Block)

[and] that they (A-Block C.O.'s) don't go for any inmate back-lip over there."  (*Id.* ¶ 20.)

Plaintiff asked Defendant Bresett what his name was because "he wasn't wearing his name tag,"

and Defendant Bresett "then stated that he will give [P]laintiff his name alright; [and] open[ed]

the control gate, came outside the said gate [and] started punching [P]laintiff in his face with his

fists."  (*Id.*)  Plaintiff put his arms in front of his face to protect himself, and seconds later

Defendants Gunsett, Brothers, Carlson, Coffin, and Ketchin appeared on the scene.  (*Id.*)  Certain

of those Defendants grabbed Plaintiff's arms and handcuffed Plaintiff's hands behind his back,

beat Plaintiff, punched Plaintiff on the side of his face, and stomped on Plaintiff and kicked Plaintiff.  (*Id*.)  One of the Defendants placed Plaintiff in a choke-hold and choked Plaintiff. (*Id*.)  While the officers beat up Plaintiff, Defendant Ketchin stood by watching.  (*Id*.)  When Plaintiff was on the floor going in and out of consciousness, the Defendants lifted Plaintiff up and dragged him to SHU.  (*Id*.)  Plaintiff was later taken to the infirmary in a wheelchair.  (*Id*.)

A misbehavior report was filed against Plaintiff charging him with violating three of Green Haven's disciplinary rules: Rule 104.11 (violent conduct), Rule 100.11 (assault on staff), and Rule 107.10 (interference with employee).  (*Id*. ¶ 21.)  Plaintiff filed a grievance, then re-filed it after the office informed him it had not received his grievance.  (*Id*. ¶ 22.)

Plaintiff sustained the following injuries: laceration to the top left side of his face, cut under his upper lip, abrasion on left ear, abrasions on shoulders, bruises on right side of his upper rib cage, bruises on upper and lower back area, and a detached retina in his left eye.  (*Id*. ¶ 23.) Plaintiff sustained the following permanent damage: a blind spot in the center of his left eye and cataracts in the left eye.  (*Id*.)  While Plaintiff was in the Green Haven infirmary, he received no medical care aside from having his injuries documented.  (*Id*. ¶ 26.)  The medical staff at Green Haven determined that Plaintiff's injuries were not serious and directed correctional staff to escort Plaintiff back to his SHU cell.  (*Id*.)  Since February 2, 2011, Plaintiff has continued to notify medical staff at Green Haven that he is still experiencing pain in his body and left eye. (*Id*. ¶ 27.)  Plaintiff has received no medical response and filed a grievance regarding his medical care.  (*Id*.)  After Plaintiff filed the grievance, he underwent surgery on his left eye on March 17, 2011.  (*Id*. ¶ 30.)  The delay in medical attention caused permanent damage to Plaintiff's eyesight.  (*Id*. ¶ 31.)  Defendant Bernstein oversees Green Haven's medical care and arranges inmate visits to outside specialists.  (*Id*. ¶ 29.)

Plaintiff further alleges that when he was placed in SHU after he was beaten up, he only received 4 of his 5 property bags.  (*Id.* ¶ 32.)  This missing bag contained Plaintiff's legal materials, which prevented Plaintiff from pursuing an appeal in the 2010 Lawsuit.  (*Id.*)  Plaintiff also states that he was prevented from accessing the law library.  (*Id.* ¶ 35.)

Additionally, a month after the alleged beating, Plaintiff's writ of *habeas corpus* on his criminal case was denied, but Plaintiff only learned about the denial a year later while he was housed in the Southport Correctional Facility.  (*Id.* ¶ 33.)  Green Haven had received the court's decision but failed to notify Plaintiff about the legal mail.  (*Id.*)  Allegedly, the court's decision contained Plaintiff's alias name, William Riley (Plaintiff changed his name to Ajamu Olutosin in 1996).  (*Id.* ¶ 36.)  Defendant Ryan is the supervisor of Green Haven's mail room staff.  (*Id.* ¶ 33.)

## MOTION TO DISMISS STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Nike, Inc. v. Already, LLC,* 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides,* 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits . . . ."  *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000).

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) ("*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010). The Court, again, must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is " 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Even so, "pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y.*

*Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

### I.    Collateral Estoppel

Defendants aver that Plaintiff's excessive force, retaliation, failure to intervene, and due process claims in this action are barred by the doctrine of collateral estoppel because Plaintiff already unsuccessfully appealed the determination of the disciplinary hearing finding him guilty of assault on Green Haven staff.  The doctrine of collateral estoppel, or issue preclusion, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1 (1984).  "[I]nferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas v. City of New York,* 377 F.3d 200, 205 (2d Cir. 2004).  "Under New York law, the doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue 'has necessarily been decided in the prior action and is decisive of the present action,' and (2) there has been 'a full and fair opportunity to contest the decision now said to be controlling.'" *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) (quoting *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); citing *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir. 1995)).[3]  The burden of showing that the issues are identical and necessarily were decided in the prior action rests with the party seeking to apply issue

---

[3] New York law determines the preclusive effect of a prior judgment in an Article 78 proceeding.  *Giakoumelos*, 88 F.3d at 59.  *See also Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 783 (S.D.N.Y. 2003) ("[T]his Court is obliged to give the same issue preclusive effect to the Article 78 proceedings as would be given by the courts of New York.").

preclusion while the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing its application." *Latino Officers Ass'n,* 253 F. Supp. 2d at 783.

"As a general matter, 'collateral estoppel effect will only be given to matters actually litigated and determined in a prior action, because if an issue has not been litigated, there is no identity of issues.'" *Linden Airport Mgmt. Corp. v. New York City Econ. Dev. Corp.*, No. 08-cv-3810 (RJS), 2011 WL 2226625, at *6 (S.D.N.Y. June 1, 2011) (quoting *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (N.Y. 1985)). "However, '[i]t is not necessary that the issue have been "actually litigated" in the sense that evidence have been offered on the point." *Linden Airport*, 2011 WL 2226625, at *6 (quoting *Schuh v. Druckman & Sinel, LLP*, 602 F. Supp. 2d 454, 468 (S.D.N.Y. 2009)). "For a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Linden Airport*, 2011 WL 2226625, at *6 (internal citations and quotations omitted).

Plaintiff initiated an Article 78 proceeding to challenge the determination made at his Tier III disciplinary hearing conducted between February 7 and February 25, 2011 at Green Haven (the "Article 78 Proceeding"). (Defs.' Ex. A, ECF No. 70-1, at 1.) At the disciplinary hearing, Plaintiff was found guilty of violating Rule 100.11 (assault and fighting), Rule 104.11 (riot, disturbances and demonstrations), and Rule 107.10 (interference with an employee). (*Id.*) That determination was affirmed on appeal. (*Id.* at 2.) In the Article 78 Proceeding, Plaintiff asserted the following challenges to the disciplinary hearing's findings: (1) noncompliance of the misbehavior report; (2) denial of effective employee assistance; and (3) denial of a fair and

impartial hearing officer.  (*Id.*)  Consequently, the New York State Supreme Court's review of the disciplinary hearing's determinations was confined to those topics.  (*Id.* at 2–3.)  In particular, the New York State Supreme Court analyzed whether the misbehavior report was prepared by an officer who had personal knowledge of the incident or ascertained the facts of the incident; whether Plaintiff received effective assistance at his administrative hearing; and whether the hearing officer was biased against Plaintiff.  (*Id.*)  On appeal, the Appellate Division, Third Department, affirmed the Supreme Court's dismissal of Plaintiff's petition.  (Defs.' Ex. B, ECF No. 70-2.)

In support of their collateral estoppel argument, Defendants seize upon language in the Appellate Division's opinion—"the evidence of [Plaintiff's] guilt was overwhelming."  (Defs.' Ex. B, ECF No. 70-2 at 2.)[4]  From this, Defendants draw the conclusion that the Appellate Division already determined certain issues and argue Plaintiff is collaterally estopped from bringing certain claims in the instant action.  However, a careful review of the Amended Complaint and the decisions of the New York State Supreme Court and the Appellate Division reveals that Plaintiff's excessive force, retaliation, and failure to intervene claims asserted in this action were not raised by Plaintiff in the Article 78 proceeding nor addressed by the state courts. Plaintiff's due process claim, however, is subject to collateral estoppel.

### A.  *Excessive Force Claim*

Defendants assert that collateral estoppel warrants dismissal of Plaintiff's excessive force claim because the Appellate Division "reviewed the facts surrounding the alleged assault and concluded that the Defendants did not assault Plaintiff or use excessive force."  (Defs.' Mot. at 6.)  The Court disagrees.  Though the Appellate Division decision includes a few sentences

---

[4] Page numbers correspond to ECF pagination.

regarding the confrontation between Plaintiff and certain C.O.'s, the Court is not of the opinion that a mere summary description of the events underlying Plaintiff's misbehavior report constitutes actual litigation of Plaintiff's excessive force claim.  Defendants have failed to carry their burden of demonstrating that the state courts, in the Article 78 Proceeding, necessarily grappled with Plaintiff's allegation that he was beaten and repeatedly punched by several officers.  Moreover, the Appellate Division's standard of review for examining the disciplinary hearing's determination—whether it "was affected by an error of law or was arbitrary and capricious or an abuse of discretion"—is a highly deferential standard.  N.Y. C.P.L.R. § 7803. Accordingly, the Court rejects Defendants' contention that Plaintiff is collaterally estopped from asserting an excessive force claim in this action.

### B.  Retaliation Claim

With respect to Plaintiff's retaliation claim, Defendants assert that "[t]he state court's attribution of guilt to Plaintiff necessarily precludes a finding that Defendants acted with any intent to retaliate against Plaintiff for filing grievances."  (Defs.' Mot. at 8.)  This argument fares no better than it did for Plaintiff's excessive force claim.  In *Colon*, the Second Circuit rejected the argument that the plaintiff's retaliation claim was raised in the Article 78 proceeding.  58 F.3d at 870.  The court noted that the plaintiff's Article 78 proceeding was "narrowly framed" and saw "no reason to read the Appellate Division's opinion as implicitly deciding an issue that was not even presented to it."  *Id*.  Similarly, here, Plaintiff's retaliation claim was not the subject of the Article 78 Proceeding, it was not presented to either state court, and it was not determined by either state court.  Therefore, collateral estoppel does not prevent Plaintiff from raising his retaliation claim in the instant action.

### C. Failure to Intervene Claim

Defendant's collateral estoppel argument with respect to Plaintiff's failure to intervene claim is rejected for the same reasons discussed *supra* in Parts I.A and I.B.

### D. Due Process Claim

Plaintiff's due process claim pertains to his inability to obtain certain documents for his disciplinary hearing and the alleged bias of the hearing officer. (Am. Compl. ¶ 43.) These allegations are the very issues that were the subject of the Article 78 Proceeding and were already considered and decided by the state courts in that proceeding. (*See* Defs.' Ex. A, ECF No. 70-1); *see also Robinson v. Scully*, No. 89-cv-7244 (RJW), 1993 WL 340998, at *5 (S.D.N.Y. Aug. 23, 1993) ("[I]t is clear that the overall issue raised in the complaint of whether the hearing violated plaintiff's right to due process of law was also raised in plaintiff's Article 78 petition and adjudicated in that proceeding.") Defendants have met their burden of demonstrating (1) the identity of issues in the Article 78 Proceeding and Plaintiff's due process claim and (2) that the issues raised by Plaintiff's due process claim were already decided in the Article 78 Proceeding.

Plaintiff, on the other hand, has failed to demonstrate that he was not afforded a full and fair opportunity to litigate those issues in the Article 78 Proceeding. *See Giakoumelos*, 88 F.3d at 60. With respect to his challenge that he did not receive all requested documents for the disciplinary hearing, the Supreme Court found that the hearing officer adjourned the hearing to enable Plaintiff to obtain requested documents. (Defs.' Ex. A, ECF No. 7-1 at 4.) As for the redacted document, the Supreme Court determined that Plaintiff failed to demonstrate prejudice in receiving a redacted version and noted that Plaintiff did not receive "ineffectual" assistance merely because he was denied every document he requested. (*Id.*) On appeal, the Appellate

Division determined that any issue resulting from the document's redaction was cured by testimony from the correction sergeant identifying the injured officer's work location. (Defs.' Ex. B, ECF No. 70-2.)  With respect to the alleged bias of the hearing officer, the Supreme Court noted that such a claim was unsupported by the record and that the record in fact demonstrated that the hearing officer reviewed all of Plaintiff's arguments and explanations of the incident. (Defs.' Ex. A, ECF No. 70-1, at 4.)  On appeal, the Appellate Division affirmed the Supreme Court's finding that there was no evidence of bias on the part of the hearing officer because he was not involved in the investigation of the incident.  (Defs.' Ex. B, ECF No. 70-2.)

"This is the situation—the relitigation of claims already decided under constitutionally adequate circumstances—that the Full Faith and Credit Statute seeks to avoid." *Giakoumelos*, 88 F.3d at 61.  As the Second Circuit has cautioned, "[c]ollateral estoppel in a subsequent § 1983 action is one of the risks attendant to" the decision to file an Article 78 petition seeking review of an administrative determination.  *Id.*  The Court finds that Plaintiff is collaterally estopped from bringing his due process claim in this action and grants Defendants' motion to dismiss that claim.

## II.    Exhaustion

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09-cv-9199 (PGG), 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)) (internal quotation marks and citations omitted). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion[,] . . . [t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007).  *See also Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004).  The Defendants bear the burden of demonstrating that Plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009).  Where a prisoner has failed to exhaust some, but not all, of the claims included in the complaint, the PLRA does not require dismissal of the entire complaint. *Tafari v. Hues*, 539 F. Supp. 2d 694, 697 (S.D.N.Y. 2008) (citing *Jones*, 549 U.S. at 219–24).  Instead, the court dismisses the unexhausted claims and proceeds to adjudicate the exhausted claims.  *Jones*, 549 U.S. at 224.

"[A] motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if 'nonexhaustion is clear from the face of the complaint.'" *Lopez v. Cipolini*, No. 14-cv-2441 (KMK), 2015 WL 5732076, at *4 (S.D.N.Y. Sept. 30, 2015) (citing *Lovick v. Schriro*, No. 12–cv–7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted)).  *See also Lee v. O'Harer*, No. 13–cv–1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if

13

such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04–cv–8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

Defendants argue that Plaintiff failed to exhaust (1) the retaliation claim against Defendants Bresett, Gunsett, Brothers, Carlson, and Coffin and (2) the failure to intervene claim against Defendant Ketchin. The Amended Complaint states that Plaintiff initially filed a grievance in regard to his beating, the grievance office told Plaintiff it had not received the grievance, and Plaintiff re-filed his grievance and exhausted it. (Am. Compl. ¶ 22) (citing Exhibit G to Original Complaint). Additionally, the Amended Complaint states in conclusory fashion that Plaintiff "exhausted his administrative remedies with respect to all claims [and] all defendants." (Am. Compl. ¶ 46.) The Court will examine whether Plaintiff properly exhausted his retaliation and failure to intervene claims below.

### A. Retaliation Claim

Defendants assert that Plaintiff failed to exhaust his retaliation claim because the substance of his grievance contains no allegations of retaliation and the CORC's response does not suggest that retaliation was considered during the investigation of Plaintiff's grievance. (Defs.' Mot. at 11.) The Second Circuit is clear that to exhaust a claim, "'the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.'" *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). In the present case, Plaintiff's grievance states that during Plaintiff's most recent incarceration at Green Haven, he

14

has experienced harassment from Green Haven staff following a civil lawsuit he initiated against

Green Haven regarding the prison's double-cell practice—the 2010 Lawsuit.  (Exhibit G, or ECF

No. 2-3 at 2.)  Though Plaintiff's grievance does not use the word retaliation, the language in the

grievance provided sufficient notice to Green Haven staff and CORC to enable it to investigate

claims that certain officers were taking action against Plaintiff because of the 2010 Lawsuit.

Accordingly, the Court rejects Defendants' argument that Plaintiff failed to exhaust his

retaliation claim.

B.  *Failure to Intervene Claim*

Plaintiff's failure to intervene claim, however, does not fare as well as his retaliation

claim.  Plaintiff's grievance does not mention Defendant Ketchin, and, more fundamentally, the

grievance is devoid of any description regarding a bystander officer who witnessed the incident.

Nothing in Plaintiff's grievance provided prison officials with information which would have

prompted their investigation of an officer uninvolved in the incident who nevertheless witnessed

the incident.  Moreover, nothing in Plaintiff's grievance would have triggered their investigation

of Defendant Ketchin.  Accordingly, the Court finds that Plaintiff failed to exhaust his failure to

intervene claim and grants Defendants' motion to dismiss that claim.

**III.   Excessive Force Claim**

"Under the Eighth Amendment, the use of excessive force against prisoners may

constitute 'cruel and unusual punishment.'"  *Mitchell v. Keane*, 974 F. Supp.  332, 340 (S.D.N.Y.

1997), *aff'd*, 175 F.3d 1008 (2d Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

"The test of whether the use of force violates the Eighth Amendment is 'whether the force was

applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm.'"  *Mitchell*, 974 F. Supp. at 340 (quoting *Hudson*, 503 U.S. at 6–7).  That test

"comprises both an objective and subjective component." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citations omitted). "Objectively, the plaintiff must establish that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions." *Id*. (internal quotation and citation omitted). Courts examine the "type and extent of the force used, the nature and seriousness of any injury that may have occurred, and other objective indicia . . . ." *Mitchell*, 974 F. Supp. at 340. With respect to the subjective element, a plaintiff must establish that the defendant acted "wantonly." *Romano*, 998 F.2d at 105.

Here, Plaintiff's allegations state a claim of excessive use of force against Defendants Bresett, Gunsett, Brothers, Carlson, and Coffin. The Amended Complaint alleges that those Defendants punched Plaintiff in the face, beat Plaintiff, stomped on and kicked Plaintiff, and placed Plaintiff in a choke-hold. (Am. Compl. ¶ 20.) Construing the evidence in the light most favorable to Plaintiff, the non-moving party, as the Court must do on a motion to dismiss, the repeated beating of Plaintiff even after he was on the floor and outnumbered by many officers "does not appear, on its face, to serve any useful function other than to inflict pain." *Mitchell*, 974 F. Supp. at 340–41.

Defendants assert that this Court should dismiss Plaintiff's excessive force claim because it is belied by exhibits appended to the Original Complaint and further contradicted by Plaintiff's description of his injuries in the Amended Complaint. (Defs.' Mot. at 6–8.) Defendants cite Exhibits F, G, and H in support of their argument that the use of force against Plaintiff was proportionate. (Def.'s Mot. at 6.) Exhibit F is the portion of the Use of Force Report detailing the nature of the force used by Defendants Gunsett, Brothers, and Bresett (ECF No. 2-2 at 11); Exhibit G contains the denial of Plaintiff's grievance (ECF No. 2-3 at 3); and Exhibit H is the portion of the Use of Force Report that discusses Plaintiff's injuries (ECF No. 2-3 at 5).

16

Defendants assert that these exhibits conclusively demonstrate that any use of force was "proportionate to the need to restrain a violent inmate who had already injured a correction officer."  (Defs.' Mot. at 6.)  At best, these exhibits raise issues properly reserved for summary judgment or a jury's determination.  Additionally, the Court is unpersuaded by Defendants' argument that Plaintiff's injuries are not serious enough to sustain an excessive force claim.  As the Supreme Court noted in *Hudson*, "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  503 U.S. at 7.

Evidence uncovered during discovery may ultimately prove that the force employed by Defendants Bresett, Gunsett, Brothers, Carlson, and Coffin was done in a good faith effort to maintain or restore discipline, but such a determination is best resolved on a motion for summary judgment or at trial.  Indeed, most of the cases cited by Defendants in their opposition brief occurred in the summary judgment context.  (*See* Defs.' Mot. at 7.)  In *Landy v. Irizarry*, the court noted that "the fact intensive inquiry of whether a particular use of force was reasonable is best left for a jury to decide."  884 F. Supp. 788, 797 (S.D.N.Y. 1995) (collecting cases).  Given that the court in that case was only required to apply an objective standard to evaluate the plaintiff's excessive force claim, such reasoning is even more applicable in the instant situation in which the Court must evaluate both an objective *and* subjective prong of Plaintiff's excessive force claim.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's excessive force claim.

**IV.    Deliberate Indifference Claim**

To sustain a claim of deliberate indifference, a plaintiff must allege that (1) <u>objectively</u>, the deprivation of adequate medical care was sufficiently serious, and (2) <u>subjectively</u>, defendants acted with deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 834

(1994); *Salahuddin v. Goord*, 467 F.3d 263, 279–81 (2d Cir. 2006).  "The objective component requires that 'the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted).  For the subjective prong, the official charged with deliberate indifference must act with a "sufficiently culpable state of mind."  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.

"Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation marks omitted).  *See also Hathaway*, 99 F.3d at 553 (observing that "negligent malpractice do[es] not state a claim of deliberate indifference").  "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Finally, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citation and internal quotation marks omitted).

The Amended Complaint is devoid of any allegations regarding Defendant Bernstein's personal involvement in Plaintiff's medical treatment.  Plaintiff failed to plead sufficient facts that Defendant Bernstein acted "with the requisite culpable mental state." *Hathaway*, 37 F.3d at

66.  "There are also no allegations that establish that [Defendant Bernstein] knowingly and intentionally rendered improper treatment or that he knew of and disregarded a substantial risk of serious harm" to Plaintiff.  *Joyner v. Greiner*, 195 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) (citing *Farmer*, 511 U.S. at 837–38.)  Nor has Plaintiff alleged that Defendant Bernstein "completely withheld medical care" from Plaintiff.  *Joyner*, 195 F. Supp. 2d at 504.  The sole reference to Defendant Bernstein in the Amended Complaint as the individual responsible for overseeing Green Haven's medical staff is insufficient to sustain a deliberate indifference claim.  Therefore, the Court dismisses Plaintiff's deliberate indifference claim.

## V.    Retaliation Claim

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  "As a general interpretive matter, 'the Second Circuit has admonished district courts to approach prisoner retaliation claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed act."'"  *Burton v. Lynch*, 664 F. Supp. 2d 349, 366 (S.D.N.Y. 2009) (quoting *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 325 (W.D.N.Y. 2007) (quoting *Dawes*, 239 F.3d at 491).  *See also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.") (internal quotation and citation omitted).  Therefore, "[a] complaint

of retaliation that is 'wholly conclusory' can be dismissed on the pleadings alone." *Graham*, 89 F.3d at 79 (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

### A. Protected Speech or Conduct

Plaintiff easily meets the first prong of a retaliation claim because the 2010 Lawsuit constitutes protected activity. *See Espinal*, 558 F.3d at 128–29 ("There is no dispute that [the plaintiff's] earlier federal lawsuit . . . was a protected activity.") (citing *Colon*, 58 F.3d at 872).

### B. Adverse Action

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation and citation omitted). "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Id.*

Plaintiff alleges that in retaliation for the 2010 Lawsuit (Am. Compl. ¶ 13), Defendants (1) deliberately moved Plaintiff to different double-bunk cells every few days to prevent Plaintiff from accessing the law library and making commissary purchases, (2) used excessive force against him and beat him up, (3) denied Plaintiff medical treatment and care,[5] and (4) impeded Plaintiff's access to court. (*Id.* ¶¶ 38–41.) At this stage of the proceedings, prior to development of the factual record, the Court finds these to be sufficiently adverse actions to state a claim for retaliation. *See Davis*, 320 F.3d at 354 ("at this early state, these allegations must be construed as describing an adverse action") (internal quotations and citations omitted); *Nelson v. McGrain*, No. 6:12-cv-6292 (MAT), 2015 WL 7571911, at *2 (W.D.N.Y. Nov. 24, 2015) ("At this stage of

---

[5] Though the Court previously concluded that Plaintiff failed to state a claim for deliberate indifference because the Amended Complaint is devoid of allegations that Defendant Bernstein was personally involved in Plaintiff's medical care, general allegations of denial of medical care are sufficient to allege an adverse action.

the proceeding, the Court concludes that the claimed retaliatory acts were not merely de minimis acts of harassment, which is all that is required to reach a jury on the issue of whether the retaliatory actions could deter a person of ordinary firmness from engaging in protected conduct.") (internal quotation and citation omitted); *see also Guillory v. Haywood*, No. 9:13-cv-01564 (MAD), 2015 WL 268933, at *17 (N.D.N.Y. Jan. 21, 2015) (preventing inmate's access to law library when inmate has pending lawsuit constitutes an adverse action); *Bowens v. Pollock*, No. 06-cv-0457A (SR), 2010 WL 5589350, at *11 (W.D.N.Y. Oct. 12, 2010), *report and recommendation adopted*, No. 06-cv-0457A (SR), 2011 WL 146836 (W.D.N.Y. Jan. 18, 2011) (allegation that inmate was relocated to double-bunk cell is sufficient adverse action); *Rivera v. Goord*, 119 F. Supp. 2d 327, 340 (S.D.N.Y. 2000) (physical assault held to be sufficient adverse action); *and Walker v. Schriro*, No. 11-cv-9299 (JPO), 2013 WL 1234930, at *9 (S.D.N.Y. Mar. 26, 2013) ("[d]enial of medical care that could address extreme pain surely qualifies as an [adverse] action") (internal quotation and citation omitted).

### C. Causal Connection

Whether Plaintiff has sufficiently alleged a causal connection (the third prong) presents a more difficult question for the Court. Defendants argue that the Court should dismiss Plaintiff's retaliation claim because the pleadings are devoid of any allegation that the Defendants knew about the 2010 Lawsuit, and therefore Plaintiff cannot establish the third element of a *prima facie* retaliation claim. (Defs.' Mot. at 9, 19–20.) Though Plaintiff's pleadings are devoid of any direct allegation that any of the Defendants knew about the 2010 Lawsuit,[6] this Court finds

---

[6] Paragraph 14 of the Amended Complaint states that "another C.O." made a passing remark to Plaintiff that his typewriter was missing because he filed a lawsuit. However, the Amended Complaint does not identify that individual as any of the named Defendants, nor does the Amended Complaint allege that the unnamed C.O. took any later adverse action against Plaintiff because of the 2010 Lawsuit.

21

*Espinal* instructive on the matter.  *See Barrington v. New York*, 806 F. Supp. 2d 730, 747

(S.D.N.Y. 2011).

In *Espinal*, the Second Circuit noted that "[a] plaintiff can establish a causal connection

that suggests retaliation by showing that protected activity was close in time to the adverse

action."  558 F.3d at 129 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74

(2001)).  As there is no bright line that defines "the outer limits beyond which a temporal

relationship is too attenuated," a court is free to "exercise its judgment about the permissible

inferences that can be drawn from temporal proximity in the context of particular cases."  *Id.*

(internal quotation and citations omitted).  There, the Second Circuit determined that a six-month

lapse in time between when the plaintiff filed his federal lawsuit and the alleged retaliatory

beating by officers, including an officer named as a defendant in the previous suit, was

"sufficient to support an inference of a causal connection."  *Id.*  Additionally, the court noted that

it was "a legitimate inference" that an officer involved in the alleged retaliatory conduct learned

of the earlier lawsuit from one of the officers involved in the prior lawsuit.  *Id.* at 130.

In the present case, the alleged adverse actions all happened within a ten month time

period following the filing of the 2010 Lawsuit.  Such a short lapse in time, and, particularly, the

fact that the adverse actions appeared to happen continuously over a period of time leading up to

the beating and inadequate medical care, supports the inference that the adverse actions were

taken in response to the 2010 Lawsuit.  Additionally, Plaintiff alleges that Senior Corrections

Counselor Gonzales, who was named as a defendant in the 2010 Lawsuit, and/or Defendant

Koskowski was responsible for Plaintiff's double-bunk cell placement.  (Am. Compl. ¶ 15.)  It is

a legitimate inference that Defendant Koskowski learned of the 2010 Lawsuit from Senior

Corrections Counselor Gonzales and retaliated against Plaintiff in response to the 2010 Lawsuit.

*See Espinal*, 558 F.3d at 130.  Additionally, the Court may infer that the other Defendants generally were aware of the 2010 Lawsuit.  This is supported by Plaintiff's allegation that an unnamed officer made a remark to Plaintiff regarding Plaintiff's earlier lawsuit.  (Am. Compl. ¶ 14.)  The Court cannot conclude at this juncture that Defendants were unaware of the 2010 Lawsuit, though further discovery in this matter may reveal that certain Defendants had no knowledge of the 2010 Lawsuit and thus retaliation claims cannot be maintained against them. Accordingly, though the Court is wary of inmate retaliation claims, Plaintiff has alleged sufficiently (1) protected activity, (2) adverse actions, and (3) causal connections to withstand Defendants' motion to dismiss.

## VI.     State Law Claims

Plaintiff appears to assert pendent state law claims for assault, battery, and negligence. (Am. Compl. at "Introduction".)  Defendants argue that those claims are barred by New York Correction Law § 24 (Defs.' Mot. at 16), which requires claims against DOCCS employees "arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties" to be brought in the New York Court of Claims.  N.Y. Correct. Law § 24.  In *Baker v. Coughlin*, the Second Circuit held that New York Corrections Law § 24 bars a plaintiff from pursuing state law claims against state officers in their personal capacities for actions arising out of their state employment.  77 F.3d 12, 16 (2d Cir. 1996) ("Appellants are entitled to invoke the benefits of § 24 irrespective of the forum in which Baker chooses to pursue her claims. Because a New York court would have dismissed Baker's claims against Appellants pursuant to § 24, the district court should have done so.").  In the present case, because "the officers involved were endeavoring to do their job—perhaps poorly—at the time of the [alleged actions]," § 24 applies and Plaintiff's state law claims are dismissed.  *Ierardi*

*v. Sisco*, 119 F.3d 183, 188 (2d Cir. 1997) (citing *Baker*, 77 F.3d at 14; *Cepeda v. Coughlin*, 128 A.D.2d 995, 995 (3d Dep't 1987)).

## VII.    Access to Courts Claim

"It is well established that all persons enjoy a constitutional right of access to the courts . . . ." *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997).  "The right of access to courts extends beyond mere physical access to a courtroom and a judge.  For instance, the right of access may include affording prisoners who are preparing legal papers 'adequate law libraries or adequate assistance from persons trained in the law . . . .'" *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).  "Interference with legal mail [also] implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis*, 320 F.3d at 351.  However, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."  *Id.* (citations omitted). "In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.*, took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." *Monsky*, 127 F.3d at 247 (internal citation and quotation omitted).

Plaintiff alleges several grounds for his access to courts claim.  First, Plaintiff alleges that after returning from the Green Haven SHU, his property bag containing his legal mail went missing, which resulted in Plaintiff being unable to file an appeal in the 2010 Lawsuit.  (Am. Compl. ¶ 32.)  Second, Plaintiff alleges that he received a copy of the denial of his *habeas corpus* petition in his criminal case one year after the decision was issued.  (*Id.* ¶ 33.)  He explains that the Green Haven mail room staff sent the decision back to court because the document contained a different name, even though Green Haven staff is aware that Plaintiff

previously went by the name of William Riley.  (*Id*. ¶¶ 33, 36.)  Third, Plaintiff alleges that he received incorrect legal material from SHU staff in response to his requests.  (*Id*. ¶ 35.)  Fourth, Plaintiff alleges that his cell movements hindered his access to the law library.  (*Id*. ¶ 16.)

With respect to the first instance, Plaintiff alleges that the injury he sustained was his inability to pursue an appeal of the 2010 Lawsuit.  (Am. Compl. ¶ 32.)  Judge Gardephe granted the defendants' motion to dismiss the 2010 lawsuit on March 21, 2011 (No. 1:10-cv-3143 (PGG) at ECF No. 19), and the Amended Complaint states that Plaintiff received a copy of the opinion granting the motion to dismiss the 2010 Lawsuit on March 26, 2011—just a few days later.  (*Id*.) Accordingly, Plaintiff lacks standing to assert a claim for denial of access to courts with respect to the first instance because Plaintiff did not sustain an actual injury.  *See Bellezza v. Holland*, 730 F.  Supp. 2d 311, 315 (S.D.N.Y. 2010) (citing *Amaker v. Goord*, No. 98-cv-3634, 2002 WL 523371, at *11–12 (S.D.N.Y. Mar. 29, 2002); *Amaker v. Haponik*, No. 98-cv-2663, 2002 WL 523385, at *8 (S.D.N.Y. Mar. 29, 2002)).

The Court turns next to the second instance.  In the case of an isolated incident of mail tampering, such an incident or incidents "could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial governmental interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received."  *Bellezza*, 730 F.  Supp. 2d at 315 (internal quotation and citation omitted).  In the instant case, Plaintiff does not allege that there was an ongoing practice at Green Haven relating to mail censorship, but Plaintiff does allege that his belated receipt of the denial of his *habeas* petition caused him injury.  (Am. Compl. ¶ 33.)  However, the March 7, 2011 order denying Plaintiff's *habeas* petition states than an appeal from that order "would not be taken in good faith" because Plaintiff failed to make a substantial showing of the

denial of a constitutional right.  *Riley v. Conway*, No. 1:06-cv-01324 (DLI) (JO) at ECF No. 24.

Additionally, in the subsequent order denying Plaintiff's motion for an extension of time to file a

notice of appeal to the Second Circuit, Judge Irizarry credited Plaintiff's statement that he did not

receive a copy of the March 7, 2011 order until March 21, 2012 and credited Plaintiff's

justifications for his belated receipt of the March 7, 2011 order.  *Id*. at ECF No. 34.

Nevertheless, that court found that even if it adjusted the time for Plaintiff to file a notice of

appeal so as to begin the time period on March 21, 2012, Plaintiff still failed to timely file a

notice of appeal.  *Id*.  In light of Judge Irizarry's determinations that an appeal from the denial of

the *habeas* petition would not be taken in good faith and that Plaintiff's notice of appeal was

untimely (even if the time period to file the appeal did not commence until March 2012),

Plaintiff cannot demonstrate that his belated receipt of the denial of his *habeas* petition caused

actual injury.

      With respect to the third and fourth instances, Plaintiff does not allege actual injury and

cannot sustain claims for a denial of access to courts based on these instances.  *See Jermosen v.

Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) ("A delay in being able to work on one's legal

action . . . does not rise to the level of a constitutional violation.") (citing *Jones v. Smith*, 784

F.2d 149, 151–52 (2d Cir. 1986)).

## VIII.  Supervisory Liability Claim

      Plaintiff's claim against Defendant Lee, the superintendent of Green Haven, is premised

generally upon his purported failure to properly address (1) Plaintiff's letter complaints regarding

double cell placement, a missing property bag, and constant movement between cells and (2)

systemic excessive force problems at Green Haven.  (Am. Compl. ¶¶ 17–18, 24, 49, 54.)  To

successfully allege Section 1983 liability, a plaintiff must demonstrate "personal involvement"

and cannot merely rely upon an individual's position of authority. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (holding that liability "requires a showing of more than the linkage in the prison chain of command") (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973)).  "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon*, 58 F.3d at 873.

Following the Supreme Court's decision in *Iqbal*, the viability of all of the *Colon* factors has been called into question and remains unresolved in the Second Circuit.  Some courts in this Circuit have suggested that the viability of the *Colon* factors "depends on the underlying constitutional claim."  *Marom v. City of New York*, No. 15-cv-2017 (PKC), 2016 WL 916424, at *14 (S.D.N.Y. Mar. 7, 2016) (citing *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."); *Delgado v. Bezio*, No. 09-cv-6899 (LTS), 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (holding that "where the claim does not require a showing of discriminatory intent, the *Colon* analysis should still apply, insofar as it is consistent with the particular constitutional

27

provision alleged to have been violated") (internal quotation marks omitted).  Courts appear to be in agreement that the third *Colon* factor remains viable regardless of the underlying constitutional claim.  *Marom*, 2016 WL 916424, at *14.

In this instant action, the surviving claims are for First Amendment retaliation and excessive force.  Interpreted liberally, the Amended Complaint appears to allege that Defendant Lee was involved in those violations.  While Plaintiff's First Amendment retaliation claim carries an intent requirement—which renders the second *Colon* factor inapplicable—the excessive force claim has "no state-of-mind requirement," and *Marom* seems to suggest that the second *Colon* factor remains valid for that claim.  2016 WL 916424, at *15.

With respect to the second *Colon* factor, courts in this Circuit appear to be split over whether a prison official's receipt of a grievance letter from an inmate sufficiently establishes personal involvement.  *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("Courts in the Second Circuit are divided on whether a supervisor's 'review and denial of a grievance constitutes personal involvement in the underlying alleged unconstitutional act.'" (quoting *Burton*, 664 F. Supp. at 360); *compare Rivera*, 119 F. Supp. 2d at 344 (holding that plaintiff's assertions that he wrote to certain defendants regarding his medical condition and those complaints were ignored "are insufficient to hold these [defendants] liable under § 1983") (collecting cases) *and Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007) (concluding that denial of grievance letter does not establish personal involvement) *with Hall v. Artuz*, 954 F. Supp. 90, 95 (S.D.N.Y. 1997) (holding that defendants' awareness of deprivation of medical care, vis-à-vis letters from plaintiff, sufficiently establishes personal involvement at the summary judgment stage) *and Eldridge v. Williams*, No. 10-cv-0423 (LTS), 2013 WL 4005499, at *5 (S.D.N.Y. July 30, 2013) ("A defendant's personal receipt of a complaint or letter and subjective

awareness of the alleged unconstitutional conditions may be one factor that helps establish personal involvement.").

Cases appear to suggest that "the determination of personal involvement based on a letter of complaint to a supervisor . . . often depends upon the contents of the letter and whether the supervisor referred the letter to a subordinate officer or whether the supervisory official investigated and decided the issue him or herself." *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 267 (S.D.N.Y. 2014) (internal quotation and citation omitted). "Where a supervisory official reviewed and responds to a prisoner's letter of complaint, he/she is personally involved. If the supervisor fails to respond to the letter or passes the letter on to a subordinate to handle, the general rule is that the supervisor is not personally involved." *Id.* (internal quotation and citation omitted).

A. *Excessive Force*

For Plaintiff's excessive force claim, the second and third *Colon* factors both appear to be viable bases for alleging Defendant Lee's personal involvement.  With respect to the second factor, though the Amended Complaint alleges that Defendant Lee personally responded to Plaintiff's complaint, the conduct complained of in Plaintiff's grievance was the retaliatory conduct—not excessive force.  Accordingly, Plaintiff cannot establish Defendant Lee's personally involvement in the excessive force claim under the second *Colon* factor. Additionally, Plaintiff's allegations that Defendant Lee allowed the continuance of "the known pattern of abuse of excessive use of force against inmates" is entirely conclusory and fails to sufficiently allege personal involvement under the third *Colon* factor.  (Am. Compl. ¶ 49.)

*B.  First Amendment Retaliation*

Because Plaintiff cannot allege personal involvement under the second *Colon* factor for a First Amendment retaliation claim, and because the allegations that go towards the third factor are entirely conclusory, the Court dismisses the retaliation claim against Defendant Lee.

## IX.  Qualified Immunity

Defendants assert they are entitled to qualified immunity on all of Plaintiff's claims. (Defs.' Mot. at 22.)  "Qualified immunity is an affirmative defense, and an affirmative defense is normally asserted in an answer."  *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citations omitted).  "Although, 'usually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted,' a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint.'"  *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna,* 386 F.3d at 435–36 (citing *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir.1983)).  "[W]hen determining a motion to dismiss on qualified immunity grounds in advance of full merits discovery, the plaintiff's version of the facts is presumed to be true . . . ."  *Dolson v. Vill. of Washingtonville*, 382 F. Supp. 2d 598, 601 (S.D.N.Y. 2005).

The applicability of qualified immunity is governed by a two-step inquiry.  "First, the court must determine whether, taking the facts in the light most favorable to the party asserting the injury, a constitutional infraction was committed."  *Id*. (citation omitted).  "If the answer to that question is yes, the court must decide whether a reasonable official in defendant's position (as that position is described by plaintiff) ought to have known that he was violating plaintiff's constitutional rights *by doing what plaintiff alleges he did*."  *Id*.  "A defendant's assertion that the

30

plaintiff's constitutional rights were not violated, or that her version of events is wrong, does not go to the question of whether the officer was entitled to qualified immunity." *Id.*

The issue for this Court is whether Defendants are entitled to qualified immunity on the two remaining claims—First Amendment retaliation and excessive force.  The rights to be free from retaliation and excessive force were both clearly established at the time of the events underlying the instant action. *See Collins v. Goord*, 438 F. Supp. 2d 399, 421 (S.D.N.Y. 2006) (discussing clearly established right to be free from retaliation) *and Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 249 (S.D.N.Y. 1998) (discussing clearly established right to be free from excessive force).  Additionally, though Defendants attempt to introduce their own version of events surrounding the alleged beating, at this stage of the proceedings, Defendants do not—and cannot—assert that "it would have been objectively reasonable to believe that the conduct alleged by [P]laintiff was permissible." *Rodriguez*, 1 F. Supp. 2d at 249.  At this stage in the proceedings, the Court is required to accept Plaintiff's allegations as true and draw all reasonable inferences in his favor.  Accordingly, it was not objectively reasonable for Defendants to (1) prevent Plaintiff from accessing the law library, double-bunk Plaintiff, and deny Plaintiff access to medical care in retaliation for the 2010 Lawsuit and (2) repeatedly beat Plaintiff.  Therefore, Defendants are not entitled to qualified immunity on the remaining claims at this juncture.

**CONCLUSION**

For the foregoing reasons, Defendant's motion is GRANTED in part and DENIED in part. The Court dismisses the following claims:

- the deliberate indifference claim;

- the due process claim;

- the failure to intervene claim;

- the access to courts claim; and

- the supervisory liability claim.

The remaining claims are as follows:

- the excessive force claim; and

- the retaliation claim.

The Court dismisses Defendants Ketchin and Lee from the instant action, and the remaining Defendants are directed to file an answer to the excessive force and retaliation claims within 30 days hereof. The parties are directed to appear for an initial pre-trial conference on July 14, 2016 at 10:00 a.m. Defendants are directed to appear in person. Defendants' counsel shall make arrangements with the appropriate correctional facility for Plaintiff to appear via telephone conference. Parties are further directed to submit a completed case management plan. The Court respectfully directs the Clerk to terminate the motion at ECF No. 69.

Dated:   May 16, 2016                          SO ORDERED:
         White Plains, New York

                                        _____
                                        NELSON S. ROMÁN
                                        United States District Judge

32