UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICAL
DOC #:
DATE FILED: 10/31/2019

AJAMU OLUTOSIN,

Plaintiff,

-against-

C.O. GUNSETT, *et al.*,

Defendants.

14-cv-00685 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Ajamu Olutosin ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against several personnel from the Green Haven Correctional Facility ("Green Haven"), namely Sergeant Clifford Gunsett, Correction Officer ("C.O.") Jason Brothers, C.O. Sean Carlson, C.O. William Bresett, and C.O. Aaron Coffin (collectively, "Defendants"). Plaintiff asserts a claim of excessive force under the Eighth Amendment to the United States Constitution.[1]

Trial is scheduled to begin on November 12, 2019. In anticipation, both parties have filed pre-trial motions *in limine*. (*See* Pl.'s Mot. *in Limine*, ECF No. 189; Defs.' Mot. *in limine*, ECF No. 187.) For the following reasons, the parties' motions are GRANTED in part, DENIED in part, and RESERVED in part.

## BACKGROUND

The Court assumes familiarity with the facts and allegations in this case. *See, e.g., Olutosin v. Lee*, No. 14-cv-00685 (NSR), 2018 WL 4954107 (S.D.N.Y. Oct. 12, 2018) (addressing plaintiff's motion for summary judgment and defendants' cross motion for summary judgment); *Olutosin v. Lee*, No. 14-cv-

---

[1] By Opinion and Order dated October 12, 2018, this Court denied Plaintiff's motion for summary judgment in its entirety, granted Defendants' cross motion to dismiss claims of retaliation and claims related to Plaintiff's alleged retinal detachment, and denied Defendants' cross motion related to Plaintiff's claim of excessive force—the remaining claim in this matter. (ECF No. 151).

00685 (NSR), 2016 WL 2899275 (S.D.N.Y. May 16, 2016) (addressing defendants' motion to dismiss). Accordingly, it turns to the merits of the parties' motions.

## **LEGAL STANDARD**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

**DISCUSSION**

Both parties have moved *in limine* to preclude certain testimonial or documentary evidence. Plaintiff has moved for an order (1) precluding Deputy Superintendent of Security ("DSS") Mark Royce and/or Anthony Russo from offering (a) testimony related to the New York State Department of Corrections and Community Supervision's ("DOCCS") Use of Force policies and procedures (the "UOF Policy") or (b) legal conclusions regarding the same; (2) precluding Dr. Robert Bentivegna from offering expert testimony related to his medical treatment of Plaintiff after the February 1, 2011 use-of-force incident (the "February 1st Incident"); (3) limiting or excluding the expert testimony of Dr. Gregory Mazarin; (4) precluding Defendants from admitting documents, or portions of documents, drafted by various corrections officers; (5) excluding statements by Defendant Bresett regarding his fault in the February 1st Incident; (6) excluding statements by Lieutenant D. Carey, Sergeant D. Kaufman, C.O. J. MacIsaac, and C.O. J. Rodriguez as cumulative, a waste of time, and potentially prejudicial; (7) precluding Defendants from offering evidence of Plaintiff's criminal convictions or his disciplinary history; and (8) precluding documents related to Plaintiff's disciplinary charges stemming from the February 1st Incident. (Pl.'s Mem. of Law in Support of Mot. *in Limine* ("Pl. Mot."), ECF No. 189, at 1.)

For their part, Defendants have moved for an order (1) striking Plaintiff's belated Rule 26(a) disclosure and barring Plaintiff from calling any witness other than those disclosed by Defendants; (2) permitting Defendants to impeach Plaintiff with his criminal history; (3) precluding Plaintiff from offering certain logbooks into evidence; (4) precluding Plaintiff from introducing Defendants Brothers and Gunsett's Injury Reports; (5) precluding Plaintiff from introducing his disciplinary history report into evidence; (6) precluding Plaintiff from offering "speculative testimony" or evidence related to dismissed matters; and (7) requiring Plaintiff to

introduce the entirety of certain disclosed exhibits.  (Defs.' Mem. of Law in Support of Mot. *in Limine* ("Defs. Mot."), ECF No. 186, at 1-2.)

The Court addresses each motion in turn.

## I.  Plaintiff's Motions *in Limine*

## A.  Plaintiff's Motion to Preclude Expert Testimony

### 1.  DSS Russo and/or DSS Royce

In his motion, Plaintiff argues that the Court should preclude the testimony of either DSS Russo or DSS Royce because Defendants have failed to provide disclosures in conformance with the requirements of Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.  (Pl. Mot. 3-5.) Defendants disagree, arguing that their disclosure was sufficient, and that, regardless, any issues with the disclosure were substantially justified or otherwise harmless.  (Defs.' Opp'n to Pl. Mot. ("Defs. Opp."), ECF No. 198, at 4-8.)  As will be explained below, the Court agrees with Plaintiff and will limit the testimony of either DSS Russo or DSS Royce at trial.

### a.  Adequacy of Expert Disclosures

In general, a party must "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. Proc. 26(a)(2)(A).  These disclosures typically must be made at least 90 days before the date set for trial or for the case to be ready for trial.  *Id.* 26(a)(2)(D)(i).

If the witness has been "retained or specially employed to provide expert testimony," they must provide a written report containing

> (i) a complete statement of all opinions that the witness will express and the basis and reason for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the

witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* 26(a)(2)(B). By contrast, if the expert is not retained, no report is required. Instead, the expert disclosure "must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." *Id.* 26(a)(2)(C). These disclosures are "considerably less extensive than the report[s] required by Rule 26(a)(2)(B)," and courts should take "care against requiring undue detail." *Id.* Adv. Comm. Notes, 2010 amends.

"Although less is required in a [Rule 26(a)(2)(C)] disclosure," it is not acceptable to provide scant details. *See Barack v. Am. Honda Motor Co., Inc.*, 293 F.R.D. 106, 108 (D. Conn. 2013) (explaining that a "mere list of names, accompanied by three-word descriptions of the subject matter of their testimony" is not enough under Rule 26(a)(2)(C)). Nor may the disclosure only offer part of what is required under the Rules; rather, the disclosure must contain *both* the subject matter about which the witness will testify *and* a summary of the facts and opinions upon which he or she will rely. *See Golding v. City of New York*, No. 15-CV-03498 (ALC)(SN), 2016 WL 6553759, at *2 (S.D.N.Y. Nov. 4, 2016) (rejecting, on reconsideration, defendants' argument that non-retained expert's testimony should be permitted because, on the merits, the disclosure "never offered a summary of the facts and *opinions* to which he would testify").

Here, DSS Russo and/or DSS Royce have been identified as experts who will provide testimony about the UOF Policy based on their specialized knowledge as Deputy Superintendents of Security within the DOCCS system. Their Rule 26(a)(2)(C) disclosure, in turn, provides the following information:

> Defendants state that Deputy Superintendent of Security Anthony Russo, or other such experienced security official from Green Haven Correctional Facility . . . may be called at trial to present testimony regarding correctional facility practices regarding the use of force, use of force techniques, and training received by

correction officers. He will testify that the use of force in this matter was reasonable and not excessive.

(Decl. of Amy Jane Agnew in Support of Pl. Mot. ("Agnew Decl."), ECF No. 188, Ex. 1 at 5.) At bottom, this disclosure fails to withstand scrutiny under the more generous disclosure requirements of Rule 26(a)(2).

As an initial matter, to the extent a summary of the expert opinion is provided, it seemingly deals with the ultimate legal conclusion at issue in this matter. Experts, of course, may provide opinions based on their scientific, technical, or specialized knowledge to help the trier of fact understand the evidence or determine a fact in issue, but the opinion detailed in Defendants' disclosure would plainly usurp the jury's role of resolving the ultimate legal conclusion at the heart of this case. *See Highland Cap. Mgmt.*, 551 F. Supp. 2d at 184 (concluding that expert testimony applying "generic legal principles to the facts of the instant case"—such that the expert was "giving his opinion that the securities law" had been violated—was "not permitted" because it "usurps the jury's role in finding the facts and applying those facts to the law as instructed by the court"). In this regard, the lone summarized opinion (to the extent it can be described as a summary) appears to be problematic, at best.

Regardless, although courts in the second circuit have not appeared to settle on the precise level of detail required under Rule 26(a)(2)(c), *see RMH Tech LLC v. PMC Indus., Inc.*, No. 3:18-cv-543 (VAB), 2018 WL 5095676, at *7 (D. Conn. Oct. 19, 2018) (comparing costs), Rule 26 plainly contemplates something more from its summary of facts than what Defendants have offered. Indeed, Defendants have summarized no facts at all. Beyond listing the subject matter of the proposed testimony, Defendants' disclosure provides nothing more than a brief statement that DSS Russo and/or Royce will testify about "the use of force in this matter." (Agnew Decl. Ex. 2 at 5.) Devoid of any factual information, this threadbare disclosure undermines the very purpose

of the rule and prevents Plaintiff from sufficiently preparing for his case. *See Anderson v. E. CT Health Network, Inc.*, No. 3:12CV785 (RNC), 2013 WL 5308269, at *1 (D. Conn. Sept. 20, 2013) (precluding expert testimony because disclosure, which was also untimely, did not provide a summary with "sufficient detail to permit defendants to prepare their defense"). The Court has no trouble concluding that Defendants have failed to comply with Rule 26(a)(2)(C).[2]

Having determined that Defendants' expert disclosure was deficient, the Court proceeds to its Rule 37 analysis.

### b. Preclusion of Russo/Royce's Testimony

Failure to comply with Rule 26 can subject a party to preclusion under Rule 37(c)(1), which "provides that a party who fails to make such disclosures [under Rule 26] 'is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." *Chevron Corp. v. Donzinger*, No. 11 Civ. 0691(LAK), 2013 WL 5493996, at *1 (S.D.N.Y. Oct. 3, 2013) (quoting Fed. R. Civ. Proc. 37(c)(1)). Although Rule 37(c)(1) is "written in mandatory terms," the imposition of sanctions for abuse of discovery is "a matter within the

---

[2] Plaintiff also challenges whether DSS Russo or DSS Royce should have provided expert reports under Rule 26(a)(2)(B). (Pl. Mot. 5-8.) As explained above, generally, if an expert is not "specially retained to provide expert testimony," there is no need for a party to provide an expert report under Rule 26(a)(2)(B). *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 182 n.13 (2d Cir. 2004). But the distinction of whether an expert is retained or not retained does not turn on "whether the expert is paid or is a volunteer, but whether the expert is brought into the case to testify." *Caruso v. Bon Secours Charity Health Sys. Inc.*, No. 14 CV 4447(VB), 2016 WL 8711396, at *7 (S.D.N.Y. Aug. 5, 2016). Here, neither DSS Russo nor DSS Royce held the position of Deputy Superintendent of Security during the February 1st Incident and were not specifically involved in the events giving rise to the lawsuit, although DSS Royce purportedly handled the subsequent disciplinary hearing against Plaintiff (Agnew Decl. Ex. 11). Furthermore, neither DSS Russo nor DSS Royce are currently employed with Green Haven. It therefore appears they have been brought in as a result of the litigation to provide their specialized knowledge to the instant facts. For this reason, it is at least arguable—if not likely—that Defendants ought to have provided expert reports under Rule 26(a)(2)(B). *See Caruso v. Bon Secours Charity Sys., Inc.*, 703 F. App'x 31, 33 (2d Cir. 2017) (finding that experts report was required because "the two experts' only connection to the matter was their being 'recruited to provide expert opinion testimony,'"); *see also Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (concluding that expert was not retained or specifically employed for purpose of offering expert opinion testimony because "his opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation"). Nevertheless, because Defendants' disclosures failed to satisfy even the lax standard of Rule 26(a)(2)(C), the Court need not definitively resolve this issue at this time.

discretion of the trial court." *Hein v. Cuprum, S.A., De C.V.*, 53 F. App'x 134, 136 (2d Cir. 2002)

(citing *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995)).

And in deciding whether to exercise its "wide discretion to impose sanctions," courts may consider

> (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness [ ]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294-96 (2d Cir. 2006) (citation omitted).

Preclusion, however, is a "drastic remedy and should be exercised with discretion and caution." *NIC Holding Corp. v. Lukoil Pan Americas, LLC*, No. 05CIV9372LAKFM, 2007 WL 1467424, at *5 (S.D.N.Y. May 16, 2007) (quoting *Martinez v. Port Auth. of N.Y. and N.J.*, No. 01 Civ. 721 (PKC), 2005 WL 2143333, at *14 (S.D.N.Y. Sept. 2, 2005)). Thus, while not required, *see Design Strategy, Inc.*, 469 F.3d at 296, courts have often only precluded evidence where there was "flagrant bad faith" or a "callous disregard of the rules." *See NIC Holding Corp.*, 2007 WL 1467424 at *5-6 (denying plaintiff's motion to preclude certain witnesses from testifying at trial notwithstanding defendant's failure to identify the individuals in its disclosures, because any prejudice could be obviated by permitting depositions to take place); *Martinez*, 2005 WL 2143333 at *15 (noting that, rather than precluding witnesses identified three weeks prior to trial, plaintiff had been required to make witnesses available for depositions); *see also Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) ("While a showing of 'bad faith' is not required for preclusion to be ordered under Rule 37(c), a party's bad faith 'can be taken into account' by the Court in considering the party's explanation for its failure to satisfy its discovery obligations.").

Here, Defendants maintain that their failure to comply with Rule 26(a)(2)(C) "was substantially justified and/or harmless." (Defs. Opp. 7.) Defendants primary argument is that the

testimony of either DSS Russo or DSS Royce is "necessary in order to provide context and framework by which the jury may understand not only the realities that law enforcement must be prepared for on a daily basis in their line of work, but to determine whether Defendants' response in this instance was thus reasonable." (*Id.* at 7.) Defendants then opine that Plaintiff will suffer no prejudice because "he has received the Directive regarding use of physical force." (*Id.* at 8.) The Court disagrees. Defendants' explanation fails to establish the substantial justification or harmlessness necessary to avoid Rule 37(c)(1) sanctions.

*First*, Defendants' explanation—beyond remarkably claiming, in essence, that their disclosure was a mere courtesy[3]—does not address why they offered less than the bare minimum regarding about what either DSS Russo or DSS Royce would testify. *Second*, although the Court agrees that this testimony at issue would likely help provide context to jurors related to Defendants' defense, the importance of either individual's testimony stems from the context and framing it can provide the jury regarding the UOF Policy and Defendants' conduct, rather than its importance to resolving the ultimate issue of whether Defendants' conduct amounts to excessive force. *Third*, the actual UOF Policy does not enable Plaintiff to adequately prepare for what specialized knowledge and opinions DSS Russo or DSS Royce would provide at trial or their application to the facts of the case. Although the actual UOF Policy does delineate guidelines for DOCCS staff to follow (*see* Pl.'s Reply to Defs. Opp., ECF No. 202, Ex. 23, at 1), Defendants have represented that the proposed testimony of DSS Russo or DSS Royce would "attest to . . . the types of permissible force during a confrontational situation" and dive deeper into the "types of forces that are reasonable and permissible to use as DOCCS employees when confronted with . . . an inmate attack." (Defs. Opp. 5-6.) This proposed testimony seemingly goes beyond the four corners of

---

[3] As further detailed below, this position is wholly at odds with Defendants' request to preclude witnesses based on the timeliness of Plaintiff's Rule 26(a) initial disclosures.

the UOF Policy and would understandably require additional preparation by Plaintiff. *Finally*, continuance would not be possible with a trial scheduled to commence in just under two weeks.

Notwithstanding the above, the Court concludes that it can fashion a less drastic sanction than preclusion under Rule 37(c)(1) in the absence of any "bad faith" or "callous disregard" of the rules. Rather than precluding the testimony of DSS Russo or DSS Royce altogether, the Court will allow Defendants to offer their testimony for the narrow purposes of explaining the UOF Policy at DOCCS and the types of forces that DOCCS employees may permissibly use. In other words, DSS Russo and DSS Royce may only be offered as fact witnesses at trial and cannot offer any testimony related to whether the use of force in this case was reasonable, or other opinion testimony related to the facts of this case.

However, given that neither DSS Russo nor DSS Royce served as Deputy Superintendent of Green Haven during the February 1st Incident, there remains a question of whether either has the requisite personal knowledge necessary to testify to the UOF Policy in place in 2011. As such, their testimony is subject to Defendants' laying the necessary foundation at trial.

In conclusion, Plaintiff's motion to preclude the testimony of DSS Russo and/or DSS Royce is GRANTED in part and DENIED in part.

### 2. Dr. Robert Bentivegna

In addition to Defendants' expert disclosures of DSS Russo and DSS Royce, Plaintiff also challenges the adequacy of Defendants' Rule 26(a)(2)(C) disclosure for Dr. Robert Bentivegna. (Pl. Mot. 8-11.) Plaintiff maintains that Dr. Bentivegna can testify as a treating physician but should not be permitted to offer opinion testimony that relies on anything outside of his personal treatment of Plaintiff. (*Id.*) The Court agrees.

In general, a treating physician may testify to "opinions formed in the course of treatment without regard to the disclosure requirements of Rule 26(a)(2)." *Lewis v. Triborough Bridge*, No. 97 CIV. 0607(PKL), 2001 WL 21256, at *1 (S.D.N.Y. Jan. 9, 2001). When acting as an expert, the physician may testify to "matters beyond plaintiff's course of treatment, i.e., information acquired from outside sources." *McAfee v. Naqvi*, No. 3:14-cv-410 (VAB), 2017 WL 3184171, at *4 (D. Conn. July 26, 2017).

If a party offers a treating physician as an expert, there is no need to provide a written expert report under Rule 26(a)(2)(B) "because treating physicians are not 'retained or specifically employed to provide expert testimony in the case.'" *Id.* at *3; *see also Reynolds v. Am. Airlines, Inc.*, No. 14 CV 2429 (CLP), 2017 WL 5613115, at *6 (E.D.N.Y. Nov. 21, 2017) ("[A] treating physician need only provide a full written report under Rule 26(a)(2)(B) when 'circumstances suggest the doctor was 'retained or specially employed to provide expert testimony.'"). But a treating physician's expert disclosure must meet the requirements of Rule 26(a)(2)(C) if he or she is to opine on matters outside of his or her treatment. That disclosure must detail (1) the subject matter on which the physician is expected to testify, and (2) a summary of the facts and opinions to which the physician is expected to testify." Fed. R. Civ. Proc. 26(a)(2)(C). Applying this standard in the treating physician context, courts have looked at whether the disclosure helps the opposing party and the Court understand what the physician "will offer specifically on the subject matter for which they were disclosed, in terms of facts and medical opinions." *McAfee*, 2017 WL 3184171 at *5.

If the disclosure is lacking, the physician's testimony is limited "*solely* as to the information he/she has acquired through observation of the Plaintiff in his/her role as a treating physician [and is] limited to the facts [obtained] in Plaintiff's course of treatment." *Barack*, 293 F.R.D. at 109;

*see also Ali v. Connick*, 11-CV-5297 (NGG) (VMS), 2016 WL 3002403, at *7 (E.D.N.Y. May 23, 2016) ("The key to what a treating physician can testify to without being declared an expert is based on his/her personal knowledge from consultation, examination and treatment of the Plaintiff, 'not from information acquired from outside sources.'" (alterations omitted) (quoting *Motta v. First Unum Life Ins. Co.*, No. CV 09-3674(JS)(AKT), 2011 WL 4374544, at *3 (E.D.N.Y. Sept. 19, 2011)). The physician's testimony may nevertheless still encompass issues such as causation. *See Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996) ("[M]erely because treating physicians may be asked at a deposition to offer opinions based on their examination of a patient, 'does not mean that treating physicians do not have an opinion as to the cause of an injury based upon their examination of the patient or to the degree of injury in the future.'").

Here, Dr. Bentivegna's expert disclosure provides the following information:

> Robert V. Bentivegna, M.D., employed by the New York State Department of Corrections and Community Supervision ("DOCCS") at Green Haven Correctional Facility . . . may be called at trial as a treating physician to present testimony regarding the medical care received by Plaintiff as an inmate in DOCCS custody at Green Haven Correctional Facility. Dr. Bentivegna will testify that he was Plaintiff's treating physician while Plaintiff was incarcerated in the Special Housing Unit ("SHU") following the February 1, 2011 use of force and that Plaintiff suffered only minor, superficial injuries from that event.

(Agnew Decl. Ex. 1 at 5.). This disclosure is similar in detail to the disclosure at issue in *McAfee v. Naqvi*, in which Plaintiff provided that his "expert" doctors would

> testify as to the injuries that the plaintiff sustained to his abdomen and organs when he was denied reasonable medical attention on the date listed in the complaint specifically the injuries . . . that led to multiple surgeries. [The Doctors] treated and examined the plaintiff for the injuries that the plaintiff sustained to his abdomen and organs when he was denied reasonable medical attention. [T]hey all performed surgeries on the plaintiff to repair the effects of the denial of medical treatment. They will state that they are board certified in their specialties and that they have knowledge of the cost of medical treatment that they performed as well as generally accepted costs for treatment associated with the case and treatment with the care and treatment that he was provided and that may be needed in the future. They will state that he sustained permanent disabilities as a result of the denial of medical attention and the location of the permanency.

*McAfee*, 2017 WL 3184171 at *3. Faced with this, the court determined that the disclosure "failed to contain 'a summary of the facts and opinions to which the witness is expected to testify.'" *Id.* at *5 (quoting Fed. R. Civ. P. 26(a)(2)(C)). As a result, the court precluded the doctors' testimony to the extent that it went "beyond their actual treatment of" plaintiff. *Id.* The Court reasoned that the disclosure provided nothing to help the Defendants or the Court "understand what any of these treating physicians will offer specifically on the subject matter for which they were disclosed, in terms of facts and medical opinions." *Id.* In the end, the Court found that the disclosure only provided "mere generalities," such that it simply could not satisfy even the relaxed disclosure requirements of Rule 26(a)(2)(C). *Id.* at *6.

Like the court in *McAfee*, the Court here concludes that Dr. Bentivegna's expert disclosure is plainly lacking under Rule 26(a)(2)(C). Although the description does provide the general subject matter of Dr. Bentivegna's proposed testimony, it provides no indication—beyond "mere generalities"—of the specific facts to which Dr. Bentivegna intends to testify and provides bare-minimum details of opinions formed therefrom. There is simply no way for Plaintiff to have had "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses" based on the nature of this expert disclosure. Fed. R. Civ. Proc. 26, Adv. Comm., 1993 amend. Nor does this disclosure provide "fair notice of the basis" for Dr. Bentivegna's expected testimony and scope, *Geary v. Fancy*, No. 12-CV-796W(F), 2016 WL 1252768, at *3 (W.D.N.Y. Mar. 31, 2016), or realistically allow Plaintiff to "prepare their defense" against potential expert opinions, *McAfee*, 2017 WL 3184171 at *5.

In sum, Plaintiff's motion *in limine* to limit Dr. Bentivegna's testimony is GRANTED. Dr. Bentivegna will be permitted to testify as a treating physician at trial. He can offer opinions and conclusions based on his treatment of Plaintiff following the February 1st Incident, which includes

any medical records consulted *at that time*. Dr. Bentivegna, however, may not opine on any information or conclusions derived outside of the scope of his treatment.

### 3. Dr. Gregory Mazarin[4]

Plaintiff contends that, upon the dismissal of Plaintiff's retinal detachment claim, Dr. Gregory Mazarin's remaining opinion is nothing more than a legal conclusion. (Pl. Mot. 12.) Defendants rebut Plaintiff's position, averring that Dr. Mazarin "will testify as to the nature and extent of Plaintiff's injuries," notwithstanding the "inartful" language in his report. (Defs. Opp. 12.) As will be explained, at this juncture, Dr. Mazarin need not be precluded as a witness. His testimony, however, cannot encompass legal conclusions and must be confined to the opinions in the report submitted.

In general, district courts must determine whether an "expert's testimony (as to a particular matter) will 'assist the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). To this end, "although [] expert[s] may opine on an issue of fact within the jury's province, [they] may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see also Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury."). Put differently, even though an opinion will not be objectionable just because it embraces an ultimate issue, Fed. R. Evid. 704(a), "'expert testimony that expresses a legal conclusion' must [] be

---

[4]     Plaintiff argues that Dr. Mazarin cannot offer any expert testimony related to Plaintiff's dismissed retinal detachment claim. (Pl. Mot. 14.) Defendants, for their part, contend that "[u]pon Plaintiff's representation that he will not introduce any such evidence at trial, Defendants will not solicit evidence about Dr. Mazarin's assessment." (Defs. Opp. 10 n.4.) As there does not appear to be any meaningful disagreement on this point, the Court will GRANT this branch of Plaintiff's motion.

excluded." *Hewitt v. Metro-North Commuter R.R.*, 244 F. Supp. 3d 379, 393 (S.D.N.Y. 2017) (quoting *Hygh*, 961 F.3d at 363).

Here, Dr. Mazarin's remaining opinion is that "there was no evidence of excessive force utilized" in the February 1st Incident. (Agnew Decl. Ex. 12 at 1.). Although Dr. Mazarin's cannot solely opine on whether Defendants used excessive force, *see Horvath v. City of New York*, No. 12 CV 6005(RJD)(JMA), 2015 WL 1757759, at *8 (E.D.N.Y. Apr. 17, 2015) ("Dr. Jubanyik may not testify as to *who* assaulted plaintiff, render ultimate legal conclusions—such as whether excessive force was used—[]or regurgitate plaintiff's account of the events at issue."), the Court is hesitant to entirely preclude Dr. Mazarin's testimony to the extent Defendants believe he can still offer an opinion of the nature and extent Plaintiff's injuries without encroaching upon a legal conclusion.[5] Therefore, the Court shall preliminarily DENY Plaintiff's motion to the extent it requests complete preclusion. Plaintiff may re-raise his objections on this issue at the appropriate time during trial if Defendants are unable to lay the proper foundation for admissibility of Dr. Mazarin's testimony. Plaintiff may also challenge Dr. Mazarin's testimony to the extent it will, in fact, be cumulative of other testimony at trial.

**B. Plaintiff's Motion to Preclude Certain Documents and Statements as Hearsay**

Plaintiff seeks to exclude "five documents and parts of documents prepared or containing information supplied by corrections officers" involved in the February 1st Incident, primarily on the basis of a lack of sufficient indicia of reliability. (Pl. Mot. 16-18 (citing Agnew Decl. Exs. 4-9.) Plaintiff also requests the exclusion of information contained in an Employee Accident Report

---

[5]     The testimony must be cabined to the specific contents of his report. *See LaSalle Bank Nat. Ass'n v. CIBC Inc.*, No. 08 Civ. 8426(WHP)(HBP), 2012 WL 466785, at *9 (S.D.N.Y. Feb. 14, 2012); *Taylor v. Evans*, No. 94 Civ. 8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) ("An expert cannot testify on a matter not disclosed in his preliminary report. That report must state 'the testimony the witness is expected to present during direct examination.'") As trial is scheduled in just under two weeks, the Court will decline to allow Defendants to amend Dr. Mazarin's expert report.

"memorializing Defendant Bresett's injuries." (*Id.*) Because the proposed Joint Pre-Trial Order ("JPTO") does not identify any of the documents that Plaintiff seeks to preclude, (*see* ECF No. 208 at 10), the Court DENIES Plaintiff's motion as moot.

## C. Plaintiff's Motion to Preclude Cumulative Testimony of Officers Only Present for His Stop and Frisk

Plaintiff seeks to preclude the testimony of several corrections officers "who were present for the strip search" of Plaintiff following the February 1st Incident, contending that their testimony would be needlessly cumulative given the video evidence of the strip search. (Pl. Mot. 19-21.) Defendants, however, ask the Court to reserve its decision until after the strip-search video is shown at trial. (Defs. Opp. 13-14.) As Defendants explain, the witnesses' testimony may be "necessary to provide evidence that the video otherwise does not clearly show." (*Id.* at 14.)

Under Federal Rule of Evidence 403, a "district judge has discretion to exclude evidence if it is cumulative of evidence already in the record." *See Int'l Minerals and Res., S.A. v. Pappas*, 96 F.3d 586 (2d Cir. 1996). Relevant considerations include whether the testimony or evidence would be "unnecessary" or "would be a waste of time." *See Highland Cap. Mgmt.*, 551 F. Supp. 2d at 184.

Here, without having had an opportunity to view the video evidence referenced by both Plaintiff and Defendants, the Court cannot determine whether additional testimony would implicate Rule 403's balancing test. The Court will reserve its decision on the admissibility of testimony by Lieutenant D. Carey, C.O. M. Frasler, Sergeant D. Kaufman, C.O. MacIsaac, and C.O. J. Rodriguez until trial, where the cumulative nature of any or all of these individual's testimony can be properly assessed in context. *See Boykin v. Western Express, Inc.*, No. 12-cv-7428 (NSR) (JCM), 2016 WL 8710481, at *11 (S.D.N.Y. Feb. 5, 2016) ("The Court reserves

judgment on the admissibility of the testimony regarding the physicians' statements until trial, where the purpose for which the statement is offered can be properly assessed in context.").

## D. Plaintiff's Motion to Preclude Defendants from Impeaching Plaintiff with His Criminal Convictions

As Plaintiff previously briefed this issue in error under Federal Rule of Evidence 609(b), Plaintiff's arguments against precluding Defendants from impeaching Plaintiff with his criminal history on cross examination primarily appear in his brief in opposition to Defendants' motion *in limine*. In that context, Plaintiff argues that the prejudice of his murder, attempted murder, and robbery convictions substantially outweigh their probative value. (Pl.'s Opp'n to Defs. Mot. ("Pl. Opp."), ECF No.196, at 7.) Defendants, for their part, argue that the impeachment value of Plaintiff's conviction bears strongly on Plaintiff's veracity and is necessary in light of the "decisive importance" of Plaintiff's credibility. (Defs. Opp. 14-17.) Ultimately, the Court holds that Defendants may offer evidence that Plaintiff has convictions and provide limited details about the length of incarceration Plaintiff faced because of to those convictions. They may not, however, identify his specific convictions, the actual length of the sentence, or offer any details of their underlying nature.

A testifying party's veracity may be impeached through the use of his or her criminal history if the probative value of the conviction is substantially outweighed by its prejudicial effect. Fed. R. Evid. 609(a)(1)(A) (explaining that evidence of a criminal conviction for a crime that was punishable by death or by imprisonment for more than one year must be admitted in a civil case, subject to Rule 403).[6] When balancing the probative value of a conviction against its prejudicial

---

[6]     Where the crime involves a dishonest act or false statement, then the evidence must be admitted regardless of the punishment. *Id.* 609(a)(2). Here, none of the crimes for which Plaintiff was convicted—murder, attempted murder, and robbery—involved dishonesty or a false statement. *See, e.g.*, *Lewis v. Velez*, 149 F.R.D. 474, 481 (S.D.N.Y. 1993) ("Neither drug crimes nor assault involve dishonesty or false statement"); *Eng v. Scully*, 146 F.R.D. 74, 78 (S.D.N.Y. 1993) ("Murder is not necessarily indicative of truthfulness").

effect, courts will examine four factors: "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 450 (S.D.N.Y. 1997) (citing 4 *Weinstein's Fed. Evid.* § 609.04[2][a], at 609-20 (1997); *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1997)).

Turning to the first factor, "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005). But courts have held that murder is "not necessarily indicative of truthfulness," *Eng*, 146 F.R.D. at 78. Moreover, the probative value of such convictions generally "is substantially outweighed by the danger of unfair prejudice." *Id.* Similarly, convictions for other crimes of force, *i.e.*, "arson, burglary, armed robbery, illegal possession of a firearm, and assault and battery" are not particularly "probative of credibility for purposes of Rule 609." *See Hartman v. Sneiders*, No. 04 CV 1784 (CLP), 2010 WL 11626508, at *12 (E.D.N.Y. Jan. 28, 2010) (collecting cases). As such, the first factor weighs against admitting Plaintiff's convictions.[7]

Regarding the second factor, although Plaintiff is currently incarcerated on an indeterminate sentence for his convictions, it has still been approximately thirty-two years since the date (1987) he was convicted. Thus, even if serious enough to warrant multiple decades of

---

[7]     Defendants seem to argue that Plaintiff's convictions have impeachment value based on the "planning or preparation" implicated by them. (Defs. Opp. 15.) In support, Defendants cite to *Somerville v. Saunders*, No. 9:11-cv-556 (MAD/DEP), 2014 WL 272415 (N.D.N.Y. Jan. 24, 2014), which notes the same point. Presumably, Defendants are referring to Plaintiff's first-degree robbery conviction in making this assertion, as Plaintiff was not actually involved in the murder. However, a review of the applicable statutory provision reveals that a crime of robbery does not require "planning or preparation" to render a conviction. Rather, the elements of robbery in the first degree are that a defendant "forcibly steals property," and either (1) "[c]auses serious physical injury to any person who is not a participant in the crime," (2) "[i]s armed with a deadly weapon," (3) "[u]ses or threatens the immediate use of a dangerous instrument," or (4) "[d]isplays what appears to be a" firearm. *See* N.Y. Penal Law § 160.15. Thus, Defendants' contention lacks merit.

incarceration (which Plaintiff has yet to complete), Plaintiff's conviction is quite remote in time. This factor weighs against admission.

The third factor, similarity of the crimes to the alleged conduct, also weighs against admission. Indeed, robbery and murder are crimes of force that are quite similar to conduct implicated by Plaintiff's "excessive force" claim and Defendants' defenses. *See Brown v. Turriglio*, No. 9:17-cv-175 (BKS/DJS), 2018 WL 4565767, at *3 (N.D.N.Y. Sept. 24, 2018) ("Plaintiff's convictions, attempted robbery and possession of a weapon, as crimes of force are similar to the conduct at issue here, excessive force."); *Somerville*, 2014 WL 272415 at *10 ("The Court is persuaded that the jury is likely to draw the inference from the nature of Plaintiff's convictions [of murder, conspiracy, criminal facilitation, robbery, weapons, and possession of weapons] that he has the propensity to engage in violent behavior."). Because Defendants' defense is that they used a reasonable amount of force "to restrain a non-compliant inmate," and that "any injury was "brought about by Plaintiff's own culpable conduct" (ECF No. 208 at 4), there is a risk that the jury might consider Plaintiff's convictions to be probative of aggressive behavior rather than using the convictions to evaluate his credibility. *See Brown*, 2018 WL 4565767 at *3; *see also Dougherty v. Cty. of Suffolk*, No. CV 13-6493 (AKT), 2018 WL 1902336, at *4 (E.D.N.Y. Apr. 20, 2018) (finding that "the disclosure of the robbery convictions forecasts substantial prejudice to the Plaintiff in the prosecution of his claims for deliberate indifference to his safety and medical needs" because the nature of these crimes invites "visceral prejudice").

Finally, the fourth factor weighs heavily in favor of admission. As Defendants explain, the parties will be testifying to "radically divergent" accounts of what transpired during the February 1st Incident. (Defs. Opp. 16.) As such, credibility of the parties, including Plaintiff, will be "of

decisive importance" for a jury that is tasked with discerning who is telling the truth. *See Loizzo*, 986 F. Supp. at 250-51.

Given the importance of Plaintiff's testimony in this case, the Court will permit Defendants to offer evidence of his prior convictions for impeachment purposes. However, it is clear from the above analysis that the Rule 403 balancing test would otherwise have cautioned against admitting evidence of Plaintiff's specific convictions or the underlying nature of those crimes. This is particularly because of the minimal probative value accorded to convictions of murder, attempted murder, and robbery, as well as the significant prejudice that those convictions entail. For this reason, the Court will exercise its discretion by permitting Defendants to cross-examine Plaintiff about the fact that he is a convicted felon serving an indeterminate sentence greater than 25 years. Defendants, however, may not offer evidence regarding the specific offenses charged, the actual length of the sentence, or the underlying details of the offense. *See Young v. Calhoun*, No. 85 CIV. 7584 (SWK), 1995 WL 169020, at *4 (S.D.N.Y. Apr. 10, 1995) ("While Young's prior felony conviction is relevant to his credibility, however, evidence concerning the type of crime for which he is incarcerated is not necessary to impeach his credibility. Accordingly, defendants may cross-examine plaintiff concerning the fact that he is a convicted felon serving a sentence of twenty years to life, but they may not elicit any details as to the nature of the offense."). In sum, Plaintiff's motion is GRANTED in part and DENIED in part.

### E. Plaintiff's Motion to Preclude Defendants from Impeaching Plaintiff with His Disciplinary History

Plaintiff argues that evidence of the "disciplinary infractions" should be excluded at trial. (Pl. Mot. 24.) For their part, Defendants have, in fact, also sought to preclude evidence of Plaintiff's disciplinary history. (Defs. Mot. 12.) As Plaintiff and Defendants appear to agree on precluding this evidence, the Court grants both parties' motion.

Plaintiff also seeks to preclude any evidence of the "disciplinary findings of violent conduct, assault on staff and interference" that Plaintiff was charged with related to the February 1st Incident (Pl. Mot. 25), and Defendants do not appear to have addressed this contention. To the extent this issue is not covered in the above ruling, the Court will preliminarily GRANT that portion of Plaintiff's motion as unopposed. *See Castro v. City of New York*, No. 05 Civ. 593 (KTD) (MHD), 2010 WL 11586591, at *7 (S.D.N.Y. Aug. 11, 2010) (granting motion to exclude testimony where plaintiff failed to address defendants' arguments to preclude it).

## II. Defendants' Motions *in Limine*

### A. Defendants' Motion to Preclude Plaintiff from Offering at Trial Previously Unidentified Witnesses Listed in His Belated Rule 26(a)(1) Disclosure

Although Plaintiff began this action *pro se*, the Court granted Plaintiff's request for counsel on December 13, 2018 following its resolution of the party's summary judgment motions. (ECF No. 153.) Then, on January 11, 2019—well after discovery had been completed—Plaintiff's newly appointed counsel filed her notice of appearance. (ECF No. 158.)

Upon being retained, Plaintiff's counsel pursued targeted discovery requests from Defendant.[8] As part of her efforts to facilitate that request, Plaintiff's counsel conferred with opposing counsel to draft a confidentiality stipulation. (Decl. of Colleen K. Faherty in Support of Defs. Mot. ("Faherty Decl."), ECF No. 190, Ex. B, at 2-3.) On July 1, 2019, during the course of negotiating the stipulation, Defendants' counsel represented that "even though this case started out pro se, and therefore Local Rule 33.2 applied, Defendants are now providing counsel with a FRCP

---

[8] On March 7, 2019, Plaintiff's counsel requested to seek a "written request of any and all discovery she believes is necessary for purposes of representing her client," which the Court permitted the understanding that it was reasonable to reopen discovery on a limited basis. (ECF No. 167 at 7-8.) During the May 15, 2019 hearing, the Court then directed Defendants to engage in limited, targeted discovery in light of the interrogatory requests Plaintiff had served on Defendants on March 10, 2019.

26 disclosure."[9]  (*Id.* at 2.)  In response, on July 2, 2019, Plaintiff's counsel represented that she would also "get [Defendants' counsel] a Rule 26 Disclosure" by July 15, 2019.  (*Id.* at 1.)  Notwithstanding her representation, however, Plaintiff's counsel did not provide disclosures until September 28, 2019.[10]  (Defs. Mot. 2.)

Defendants now argue that Plaintiff's "last minute" pretrial initial disclosure warrants preclusion of three witnesses: Douglas Holland, Keith Schmitt, and Jabbaris Dove.  (Defs. Mot. 2-9.)  The Court disagrees.[11]  There is no basis in either the purpose of the rule or its case law to conclude that Rule 26(a)(1)'s initial disclosure requirements rigidly apply (regardless of the procedural posture of the litigation) upon the assignment of counsel to a previously *pro se* litigant.

Under Rule 26, a party must, without awaiting a discovery request, provide the other party with, *inter alia*, "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. Proc. 26(a)(1)(A).  This initial disclosure must take place "at or within 14 days after the parties' Rule 26(f) conference," or "30 days after" a party is served or joined, if after the Rule 26(f) conference.  *Id.* 26(a)(1)(C).  The purpose of this initial disclosure requirement

---

[9]     Local Rule 33.2 provides that, in a use-of-force action commenced by a *pro se* plaintiff, Defendants are required to respond to standing discovery requests adopted by the Court, denominated "Plaintiff's Local Civil Rule 33.2 Interrogatories and Requests for Production of Documents," within 120 days of service of the complaint.  N.Y. Dist. Ct. R. S.&E.D.N.Y., Local Civ. R. 33.2(a), (b)(1), (d).  The Rule explains that "[e]xcept upon permission of the Court, for good cause shown, the requests shall constitute the sole form of discovery available to plaintiff during the 120-day period."  *Id.* 33.2(e).

[10]    Plaintiff's three-page disclosure identified (1) a list of individuals who are likely to have discoverable information, (2) the documents in his possession upon which he may rely; and (3) Plaintiff's computation of damages.  (Faherty Decl. Ex. A.)

[11]    The Court again notes that Defendants have essentially contradicted themselves in their opposition to Plaintiff's motion *in limine*.  (Defs. Opp. 7 ("As the Court is aware, this matter was initiated by an incarcerated *pro se* plaintiff and therefore initial disclosures were not required.  Plaintiff was appointed *pro bono* counsel after discovery in this matter was closed.  Notwithstanding, and in good faith, Defendants provided Rule 26 disclosures to Plaintiff on July 1, 2019.").  Simply put, Defendants cannot have their cake and eat it, too.

is to "require early disclosure of . . . information that ha[d] been customarily secured early in litigation through formal discovery," thereby "eliminat[ing] certain discovery, help[ing] focus the discovery that is needed, and facilitat[ing] preparation for trial and settlement." *Id.* Adv. Comm. Notes, 1993 amend. Failure to comply with these disclosure requirements is sanctionable under Rule 37, but as explained above, such a failure can be excused if substantially justified or otherwise harmless. *See Design Strategy, Inc.*, 469 F.3d at 297. As relevant here, Rule 26's initial disclosure requirements *do not* apply to actions "brought without an attorney by a person in the custody of the United States, a state, or a state subdivision." Fed. R. Civ. Proc. 26(a)(1)(B)(iv).

To be sure, the Rules do not specify what happens in the event that counsel is later appointed or hired, nor has this Court identified any case law in this circuit that provides guidance in this narrow factual scenario. Nevertheless, after a review of the rule and its underlying purposes, the Court concludes that preclusion of any witnesses identified in Plaintiff's Rule 26(a)(1) disclosure is not warranted. By the time these disclosures had been made, discovery was completed (absent the limited discovery requests made after *pro bono* counsel's appointment). Plainly, Defendants' interpretation of Rule 26(a)(1) would unjustly punish a previously *pro se* litigant for acquiring *pro bono* counsel after end of discovery in a case.[12]

---

[12] This view is not contrary to the Court's decision regarding Defendants' expert disclosures. The two disclosures have separate timing requirements, and, in this particular case, the Rule 26(a)(2) disclosures were not due until several months after *pro bono* counsel had been retained. *Compare* Fed. R. Civ. P. 26(a)(1)(C) (14 days after parties' Rule 26(f) conference) *with id.* 26(a)(2)(D) (at least 90 days prior to the date set for trial). The two disclosures also serve distinct purposes, such that, upon a *pro se* litigant eventually obtaining counsel after discovery period had closed, it is reasonable to hold parties accountable for disclosures under the expert disclosure requirements but not the initial disclosure requirements. *Compare id.* Adv. Comm. Notes, 1993 amend. ("As the functional equivalent of court-ordered interrogatories, this paragraph requires early disclosure, without need for any request, of four types of information that have been customarily secured early in litigation through formal discovery.") *with id.* ("[Paragraph 2 of Rule 26] imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.").

Defendants' reliance on out of circuit opinions such as *Harris v. Hogle*, No. 05-cv-815, 2010 WL 2302309 (W.D. Mich. June 4, 2010), and *Meneweather v. Powell*, No. C 07-4204, 2011 WL 13209593 (N.D. Cal. Dec. 13, 2011), does not compel a different result. In *Harris*, the previously *pro se* litigant had acquired representation *prior to* the expert disclosure deadline set by Rule 26(a)(2)(D).[13] Conversely, *pro bono* counsel here began representing Plaintiff well after the initial discovery period had passed. Likewise, in *Meneweather*, counsel for the previously *pro se* plaintiff had been appointed prior to the "initial Case Management Conference."[14] Again, in this case, Plaintiff's counsel was appointed well after the close of discovery in this matter.

In any event, the "delayed" disclosure was harmless. *First*, as will be discussed below, the Court will grant Defendants' motion with respect to Douglas Holland and Keith Schmitt, thereby obviating, for now, any issues related to these witnesses. *Second*, the Court finds that, based on the content of the documents produced by Defendants, which includes a letter written by Jabbaris Dove and Douglas Holland's interview of Dove (*see, e.g.*, Decl. of Amy Jane Agnew in Opp'n to Defs. Mot., ECF No. 195, Exs. 13-14; *see also* ECF No. 174 ¶ 1), Defendants would have had sufficient notice of the identity of Jabbaris Dove and awareness of the context and subject matter of his potential testimony. *See Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171 (S.D.N.Y. 2013) (failure to disclose certain witnesses harmless where Plaintiff had served document requests seeking files related to the witness, and a memorandum written by witness was entered into as an exhibit during a deposition); *Mugavero v. Arms Acres, Inc.*, 2009 WL 1904548, at *5 (S.D.N.Y.

---

[13] The opinion refers to Rule 26(a)(2)(C), which was formerly the rule that provided timing under Rule 26(a)(2).

[14] A brief review of the history of *Meneweather* indicates that Defendants had answered Plaintiff's complaint, and then moved for summary judgment that same day. *Meneweather v. Powell*, No. C 07-04204 SBA (PR), 2009 WL 10681172, at *1 (N.D. Cal. Sept. 30, 2009). The court initially granted summary judgment in Defendants' favor, but the Court of Appeals for the Ninth Circuit reversed the decision. *See Meneweather v. Powell*, 417 F. App'x 656 (9th Cir. 2011). After the appeal, counsel was appointed for plaintiff.

July 1, 2009) (failure to disclose witnesses harmless where Defendants had reason to know during discovery period that witnesses would have information relevant to Plaintiff's claims).

Having concluded that Plaintiff's delay in providing a Rule 26(a)(1) initial disclosure does not warrant preclusion of the witnesses listed therein, the Court now turns to Defendants' specific motions *in limine* challenging the admissibility of testimony from Jabbaris Dove, Douglas Holland, and Keith Schmitt.

### 1. **Jabbaris Dove**

#### a. *Offering Dove as Rebuttal Witness*

Defendants argue that Jabbaris Dove should not be allowed to testify as a "rebuttal witness" at trial because (1) "there is no procedural mechanism by which Plaintiff can reliably demand a 'rebuttal case' for trial", and (2) the proposed rebuttal testimony lacks indicia of personal knowledge and would only "serve[] to inflame the jury and prejudice Defendants." (Defs. Mot. 5-7.)  Plaintiff argues that he will only offer Dove on rebuttal should Defendants' open the door by contradicting Plaintiff's assessment of the duration of the February 1st Incident.  (Pl. Opp. 4-5.)

The "function of rebuttal evidence is to explain or rebut evidence offered by an opponent." *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992), *cert. denied*, 506 U.S. 841 (1992); *see also Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253(BSJ)(HBP), 2009 WL 4907201, at *1 n.1 (S.D.N.Y. Dec. 18, 2009) (describing "rebuttal evidence" as "evidence offered by the plaintiff . . . to contradict new issues raised by the evidence offered by the defendant.").  "[R]ebuttal is necessarily a flexible concept and [] trial judges are uniquely situated to assess the impact certain evidence or arguments have made on a jury." *United States v. Barrow*, 400 F.3d 109, 120 (2d Cir. 2005).  For this reason, it is "well-settled that '[a] district court has wide discretion in determining

whether to permit evidence on rebuttal." *F.D.I.C. v. Suna Assocs., Inc.*, 80 F.3d 681, 687-88 (2d Cir. 1996) (quoting *Tejada*, 956 F.2d at 1266).

Here, although it has previously questioned the relevance of this potential witness, the Court will reserve its decision at this time. This issue is dependent on what will transpire at trial, such that a ruling now would require the Court to "speculate as to the nature of the testimony that might open the door to" any rebuttal testimony. *Giles*, 2000 WL 1425046 at *2.

### b. *Impeachment of Dove with His Criminal History*

Defendants have argued that, should this Court permit Dove to testify, they should be permitted to impeach his veracity with a prior conviction for murder in the second degree. As previously explained, a witness's veracity may be impeached through the use of his or her criminal history if the probative value of the conviction is not substantially outweighed by its prejudicial effect. Fed. R. Evid. 609(a)(1)(A). Here, the Court will preliminary reach the impeachment issue even though it has reserved its opinion on whether Dove can testify. To that end, an application of balancing test leads this Court to conclude that Defendants may impeach Dove regarding his murder conviction, albeit with certain limitations.[15]

The first factor cuts against allowing the conviction to be offered for impeachment. To be sure, Dove's murder conviction may not directly implicate veracity, but it is nonetheless probative of his credibility because it may "remove[] any misperception that [he] is a model citizen." *See Young*, 1995 WL 169020 at *4. However, a conviction of murder certainly carries a risk of unfair bias against a testifying witness. *Id.* And such convictions "are generally not probative as to honesty or veracity." *Somerville*, 2014 WL 272415 at *8. The second factor, remoteness, likely

---

[15]     Stated again, the relevant factors courts look to under Rule 403 are as follows: "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Loizzo*, 986 F. Supp. at 250.

would cut against impeachment. Even though Dove is currently incarcerated, his conviction occurred twenty-four years ago. The third factor—the similarity of the witness's conduct in the instant litigation and the conviction at issue (or lack thereof)—favors admission. Here, Dove's murder conviction is not particularly similar to the conduct to which he would testify in this matter, *i.e.*, his perception of what occurred during the February 1st Incident. Finally, the importance of the witness's credibility also favors admission. Dove's credibility is certainly critical because he would be used to rebut a factual representation made during the Defendants' case in chief.

After weighing the relevant considerations, and in light of the importance of Dove's credibility, Defendants' may challenge Dove's veracity with his conviction should he testify at trial. However, given the relatively minimal probative value of murder on veracity compared to the unfair bias it may create, as well as general the remoteness of the conviction, the Court will limit impeachment to the fact that he has a conviction and the sentence it entailed. *See Giles v. Rhodes*, No. 94 CIV. 6385(CSH), 2000 WL 1510004, at *2 (S.D.N.Y. Oct. 10, 2000). Defendants' motion on this issue is GRANTED in part and DENIED in part.

### 2. Douglas Holland

Defendants seek to preclude the testimony of Douglas Holland, an investigator with the Office of Special Investigations ("OSI"). (Defs. Mot. 3.) Defendants contend that the likely evidence to which Holland would testify is not relevant and/or would constitute inadmissible hearsay, particularly because Holland lacks direct knowledge of the February 1st Incident and his knowledge was obtained through various interviews during his investigation. (*Id.* at 4.) Alternatively, if permitted to testify, Defendants request that Holland be allowed to provide opinion testimony under Rule 701. (*Id.*)

In his opposition, Plaintiff contends that Holland will be offered for a "very limited purpose: the authentication of the statements in the OSI file." (Pl. Opp. 4.) Defendants, however, have represented that they will "not challenge the authenticity of" OSI file. (Defs.' Reply to Pl. Opp. ("Defs. Reply"), ECF No. 204, at 7.) Because the sole purpose for which Plaintiff would offer Holland appears to be moot, the Court finds that the proposed testimony lacks any relevance, *see* Fed. R. Evid. 901, Adv. Comm. Notes ("Authentication and identification represent a special aspect of relevancy."), and it tentatively GRANTS Defendant's motion on that limited ground. If Defendants do choose to contest the authenticity of the OSI file, Plaintiff may introduce Holland for the limited purpose of authentication, and if Plaintiff chooses to offer testimony beyond authentication, Defendants are free to re-raise their objections to his testimony at that time.

### 3. Keith Schmitt

Finally, Defendants seek to preclude the testimony of Keith Schmitt "because his only purpose" would be to "authenticate documents—the authenticity of which Defendants do not dispute." (Defs. Mot. 5.) Plaintiff, however "has no intention of calling Keith Schmitt." (Pl. Opp. 3.) Defendants' motion is DENIED as moot.

## B. Defendants' Motion to Impeach Plaintiff with His Criminal History

For the reasons specified in this Court's analysis of Plaintiff's motion to preclude the use of his criminal history for impeachment purposes, the Court GRANTS Defendants' motion in part and DENIES Defendants' motion in part.

## C. Defendants' Motion to Preclude Exhibits 1, 13, and 17

Defendants argue that Plaintiff may not introduce into evidence various logbooks, which they maintain are inadmissible hearsay. (Defs. Mot. 10-11.) Defendants also contend that any entries were made by individuals who lacked personal knowledge of the events described therein. (*Id.* at 10.) Plaintiff counters that the logs are admissible as business records, and that any issues

of trustworthiness related to the content of the logs is diminished by DOCCS's integration of the logs "into company records during the ordinary course of business." (Pl. Opp. 8-9.)

Under Federal Rules of Evidence 801 and 802, hearsay is not admissible if offered to prove the truth of the matter asserted in the statement. However, business records, even if hearsay, are admissible if the following elements are met:

> "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Here, Plaintiff maintains that the evidence in question could be admitted under the business records exception and points to several authorities supporting his position. In fact, various courts have found that logbooks can constitute business records if they otherwise meet the applicable standard under Rule 803. *See, e.g., United States v. Reyes*, 157 F.3d 949, 952-53 (2d Cir. 1998) ("Reyes makes three arguments that the district court erred in admitting the prison visitor logbook under Rule 803(6). Each argument fails."); *Gulf S. Mach., Inc. v. Kearney & Trecker Corp.*, 756 F.2d 377, 381 (5th Cir. 1985) (holding that district court did not abuse its discretion in admitting, under Rule 803(6), a logbook of mechanical malfunctions); *Cano v. City of New York*, 119 F. Supp. 3d 65, 85 n.1 (E.D.N.Y. 2015), *aff'd in part and vacated in part on other grounds*, *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) (noting that logbook of maintenance performed at an arrest facility was admissible as a business record under Rule 803(6)).

The above notwithstanding, Defendants contend that the logbooks are inadmissible because they contain entries "that are written by officers who were not present to witness those events and therefore could only have reproduced them in those logs based upon statements by

others."[16]  (Defs. Mot. 10.)  The Second Circuit, however, has rejected a similar challenge to what amounts to an attack on the trustworthiness of particular records.  Specifically, in *United States v. Reyes*, defendant had argued that the "business record exception [was] inapplicable because prison visitors who write their names in the logbook ha[d] no business duty to provide the information," which, defendant argued, would remove the logs from Rule 803(6)'s umbrage.  157 F.3d at 952.  The Second Circuit made it clear that so long as someone had a duty to verify the information contained therein, the business record exception can still apply even where the third party providing the information had not duty to report it.  *Id.*  And because the district court had found that testimony presented at trial "was sufficient to show that the logbook was kept under a duty of accuracy," the Second Circuit concluded that the district court did not abuse its discretion by admitting the logbook as a business record.[17]  *Id.* at 953.

Nevertheless, at this juncture, Plaintiff has yet to formally lay a foundation for admitting of Exhibits 1, 13, or 17 at trial.  Nor has Plaintiff—beyond arguing that he should "be able to admit Exhibits 1 and 13 for impeachment or other purposes" (Pl. Opp. 9)—even indicated the actual purpose for which he will use the exhibits at trial.  Accordingly, the Court will reserve its decision on Defendants' objection to these exhibits until Plaintiff has had an opportunity to lay the necessary foundation for admission at trial.

---

[16]     Defendants also argue that the logbooks would still be inadmissible because the statements contained within the logbook would be inadmissible "hearsay within hearsay."  As Defendants put it, the "statements contained within those logs are repeated statements made by declarants outside of court and, therefore, hearsay."  (Defs. Reply 7.)  As will be explained, resolution of this issue at this time is premature because Plaintiff has yet to have an opportunity to lay the requisite foundation for the logbooks.

[17]     Defendants' reliance on *United States v. Chen Kuo*, No. 10-cr-671, 2011 WL 145471, at *12 (E.D.N.Y. Jan. 18, 2011) does not alter this conclusion.  The records at issue in *Chen Kuo* were a "sprint report" containing information recorded by 911 operators and broadcast to police over radio, and the corresponding 911 recordings.  *Id.* at *1.  The court opined that the recordings and the report could constitute business records, but that the information within them were hearsay within hearsay.  *Id.* at *11-12.  Because the 911 callers were under no duty to report that information, their statements were not automatically covered by the business record exception, as was the case in *Reyes*.  *Id.* at *12.  There was no indication in the opinion, however, that the 911 operators had a way to verify the information supplied by those 911 callers.

### D. Defendants' Motion to Preclude Exhibits 4 and 5 as Cumulative

Defendants seek to preclude Plaintiff from introducing evidence related to C.O. Brothers and Sergeant Gunsett's injury reports because neither disputes that he was injured during the February 1st Incident. (Defs. Mot. 11.) Defendants maintain that the reports would simply confirm Defendants Brothers and Gunsett's testimony, rendering them needlessly cumulative under Rule 403. (*Id.*) Plaintiff, for his part, explains that he "does not seek to . . . demonstrat[e] that Defendants Brothers and Gunsett were not injured," but asks to reserve his right to introduce the reports for other purposes that he does not specify. (Pl. Opp. 9.) As these reports' admissibility (or lack thereof) will become evident at trial, the Court will reserve a decision until that time.

### E. Defendants' Motion to Preclude Exhibit 31 as Improper Character Evidence

As previously explained, both parties have agreed to preclude the introduction of Plaintiff's disciplinary history, and the Court has GRANTED both parties' motions.

### F. Defendants' Motion to Preclude Speculative Testimony About an Unidentified Inmate's Alleged Death

Defendants argue that Plaintiff should be precluded from offering into evidence any information related to C.O. Bresett allegedly killing an inmate in the past. (Def. Mot. 13.) Plaintiff appears to agree to this preclusion. (Pl. Opp. 10.) Defendants' motion is GRANTED.

### G. Defendants' Motion to Preclude Exhibits 18, 19, 22, and 23 or Any Evidence Related to Matters That Have Been Dismissed

Defendants seek to preclude Plaintiff from offering any evidence related to claims that this Court has already dismissed because "several of the exhibits on Plaintiff's proposed pretrial order exhibit list reference these events." (Defs. Mot. 14.) Specifically, Defendants reference Plaintiff's Exhibits 18, 19, 22, and 23 of the JPTO. (ECF No. 208 at 9-10.)

Plaintiff maintains that he should be permitted to use the referenced exhibits as prior consistent statements in conformance with Second Circuit law. (Pl. Opp. 10-11.) Plaintiff has

nevertheless represented that he would be "more than willing to redact references to causes of action already dismissed" but does not otherwise address the issue. (*Id.* at 11.) Given Plaintiff's representation, the Court GRANTS Defendants' motion to preclude information related to previously dismissed claims. However, the Court will reserve its decision related to whether the remaining information (if any) in Exhibits 18, 19, 22, and 23 would be admissible at trial.

## H. Defendants' Motion to Require Plaintiff to Introduce Entirety of Use of Force and Unusual Incident Reports

Defendants request that Plaintiff be "required to issue the entirety of" any documents he seeks to introduce as exhibits. (Defs. Mot. 17.) Namely, Defendants are concerned that Plaintiff will only introduce portions of the Unusual Incident and Use of Force Reports, which are listed as three separate exhibits in the JPTO. (*See* ECF No. 208 at 9.) Plaintiff, in his opposition, notes that he has moved to preclude Exhibits 20 and 21 (the Unusual Incident Report and Use of Force Report) and that he "withdraws his request to admit portions of the Use of Force Report at Exhibit 12." (Pl. Opp. 12; *see also* Pl. Mot. 16 (citing Agnew Decl. Exs. 8 & 9).) Accordingly, Defendants' motion is GRANTED.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED in part, DENIED in part, and RESERVED in part. Defendants' motion is likewise GRANTED in part, DENIED in part, and RESERVED in part.

The Clerk of the Court is directed to terminate the motions at ECF Nos. 185 & 187.

Dated:  October 31, 2019        SO ORDERED:
        White Plains, New York

_____
        NELSON S. ROMÁN
        United States District Judge